CHARLES L. HANCOCK *vs.* FRANKLIN INSURANCE COMPANY.

In 1849 A. made a note to B. for $5000 payable in 3 months, and pledged a United States bond for $5000 with interest, coupons attached, as collateral security. In 1863, the note being unpaid and the bond having matured, B. collected it in gold coin at a time when $1 in such coin was equal in value to $1.74 in paper currency. Previous to the maturity of the bond, A. had tendered the sum due on the note in such currency. In an action of money had and received, brought by A. against B. for the proceeds of the bond, *Held,* that, even if the note were outlawed, the bond did not become the property of B.; that upon its collection a portion of the proceeds paid the debt, and the balance belonged to A.; that as to such balance, the statute of limitations began to run from the time it was received by B.; that by bringing this action, A. had ratified B.'s act in collecting the bond; that the proceeds to the extent of the debt were collected by B. for his own use, and could be applied as current money in payment of the note; but that the balance was to be accounted for at its value in paper currency.

CONTRACT for $5000, money had and received to the use of the plaintiff's intestate. The writ was dated January 1, 1869. The answer was a general denial and the statute of limitations. A declaration in set-off for money lent by the defendants to the plaintiff's intestate was also filed. The answer to the declaration

in set-off was a general denial and the statute of limitations. The case was reported by *Morton*, J., for the consideration of the full court upon facts which sufficiently appear in the opinion.

*G. W. Phillips*, for the plaintiff.

*C. A. Welch*, for the defendants.

MORTON, J.  On June 30, 1849, the plaintiff's intestate gave his note for $5000 to the defendants, payable in three months, and at the same time pledged with them, as collateral security therefor, a United States bond for $5000, with interest coupons attached.  The defendants from time to time collected the coupons and applied the proceeds to the payment of the interest upon the note.  In January, 1863, the bond became payable, and the defendants collected it in gold coin.  If there had been no difference in value between gold coin and paper currency, the rights of the parties would be plain.  It was the duty of the defendants, holding the bond as collateral security, to collect it at its maturity.  When collected, the law would apply its proceeds to the payment of the debt, so far as necessary, and the balance would be held by the defendants as money received to the use of the plaintiff.  *Thayer* v. *Mann*, 19 Pick. 535.  The ground taken by the defendants, that the note was outlawed, and therefore that they had the right to treat the collateral as their absolute property, cannot be sustained.  They had the right, at any time after the note matured, upon giving notice to the pledgor, to sell the bond and apply the proceeds to the payment of their debt.  Gen. Sts. *c.* 151, §§ 9, 10.  *Whipple* v. *Blackington*, 97 Mass. 476. *Fletcher* v. *Dickinson*, 7 Allen, 23.  *Washburn* v. *Pond*, 2 Allen, 474.  *Brown* v. *Tyler*, 8 Gray, 135.  *Hunt* v. *Nevers*, 15 Pick. 500.  Not having done so, they continued to hold it in trust for the benefit of all parties.  The pledgor might avail himself of the statute of limitations as a defence to a suit upon the note. But the statute affects merely the remedy on the note, and does not, on the one hand, defeat the lien of the pledgee upon the property pledged, nor, on the other, enlarge that lien to an absolute title to the property.  If, therefore, the note to the defendants was outlawed, (which need not be determined,) upon the collection of the bond held as collateral, the proceeds went to the

payment of the debt, and the balance was money belonging to the plaintiff, and could be recovered in an action for money had and received. The statute of limitations would begin to run against such action from the time when the defendants received the money.

But the plaintiff, a short time before the bond became due, tendered to the defendants in paper currency the amount due on the note ; and he now contends that the effect of the tender was to discharge the defendants' lien on the pledged property ; that they had no right to collect the bond and apply it to their debt ; that they have no right of set-off because their note is outlawed, and therefore that he is entitled to judgment for the whole amount received by them in payment of the bond as so much money received to his use. This claim cannot be sustained. After the tender, the plaintiff would have had the right to treat the property pledged as discharged from the lien, and upon a conversion of it by the defendants, to maintain an action of trover. In such action the damages would be the value of the bond after deducting the amount of the defendants' debt. *Jarvis* v. *Rogers*, 15 Mass. 389. *Darling* v. *Chapman*, 14 Mass. 101. But he did not elect to do so. By bringing an action for money had and received, he has waived the tort and ratified the act of the defendants in collecting the bond.

The case is to be regarded, therefore, as one in which the defendants have rightfully collected the bond held by them as collateral security. In such case the general rule, as before stated, is clear. The proceeds of the collateral are to be applied to the payment of the debt so far as is required, and to that extent were received to the use of the defendants ; the surplus was money received to the use of the plaintiff, and may be recovered in this action.

But in this case the defendants received payment of the bond in gold coin, and the plaintiff contends that they should account to him for its value in paper currency at the time when it was received. We are of opinion that this claim cannot be sustained. It was not received by the defendants as a commodity, but was paid to them as current money. At the time the note was given,

gold and silver was the only legal tender; it was none the less legal currency when the bond was paid. When rightfully applied in payment of a debt, it did not overpay it, though it may have been worth more than paper currency. The same point arose in *Bush* v. *Baldrey*, 11 Allen, 367. The master of a vessel collected freight in gold coin and applied a part of it to the payment of his wages. It was held that he was not liable to account to the owner for the value of the gold coin in paper currency; but that the gold, being rightfully applied to the payment of his debt, was to be treated as any other currency. The same principle was recognized in *Howe* v. *Nickerson*, 14 Allen, 400; *Stanwood* v. *Flagg*, 98 Mass. 124; *Stark* v. *Coffin*, 105 Mass. 328; *Frothingham* v. *Morse*, 45 N. H. 545, and *Thompson* v. *Riggs*, 5 Wall. 663.

It is true that if the defendants had collected the bond merely as the agent of the plaintiff and for his use, the plaintiff would be entitled to a judgment for the amount collected, payable in gold. *Bronson* v. *Rodes*, 7 Wall. 229. *Butler* v. *Horwitz*, Ib. 258. *Independent Ins. Co.* v. *Thomas*, 104 Mass. 192. But they collected it for their own use to the extent of their debt, and are accountable to the plaintiff only for the balance over and above what was needed to pay the debt as so much money received in gold to the use of the plaintiff.

Upon this basis, the plaintiff is entitled to a judgment for $58.33 payable in gold, and interest from January 19, 1863. The plaintiff's claim that this sum is to be increased, because the defendants collected the coupons before the interest became due from time to time, is not sustained by the proofs. The fact does not appear that the defendants received the proceeds of the coupons before their interest was due.

We see no ground upon which the claim of the defendants for commissions for collecting the interest coupons can be sustained and it was not pressed at the argument.

*Judgment for the plaintiff.*