FRANK v. MORLEY'S ESTATE.

1. TRUSTS—REMEDIES—ACTION AT LAW.
   An action at law will lie to recover a trust estate consisting solely of money.

2. GIFT—EVIDENCE—STATE OF FEELING.
   Upon an issue as to whether defendant had given a specified sum to plaintiff, which she afterwards intrusted to him for investment, evidence of a promise by defendant "to give" plaintiff a similar sum, made 11 years thereafter, during which period the parties had been living in criminal intimacy, is inadmissible, having no tendency to support the claim made.

3. TRUSTS—STATUTE OF LIMITATIONS.
   In the case of an express trust, the statute of limitations does not begin to run in favor of the trustee until the trust is repudiated by him, and notice of that fact is brought home to the *cestui que trust*.

4. ATTORNEY AND CLIENT—PRIVILEGED COMMUNICATIONS.
   Communications to an attorney by one who has employed him on behalf of another, made in the presence of the latter and with reference to his business, are not privileged from disclosure in a subsequent suit between the two, since the statements cannot, as between the parties, be said to have been of a confidential nature.

5. GIFT—IMMORAL CONSIDERATION.
   A gift is not invalid as against the heirs of the donor because of the existence of illicit relations between him and the donee.

6. SAME—TRUST—INSTRUCTIONS TO JURY.
   Plaintiff presented a claim against the defendant estate, averring that, shortly after the birth of her illegitimate child, of which the deceased was the father, the latter gave the claimant a certain sum, which she subsequently returned to him to be invested, and that he had not accounted therefor. The court instructed the jury that, if the deceased had sustained illicit relations with the claimant, and was the father of her child, and in consideration thereof gave her the sum mentioned for the support of herself and child, that would be a sufficient consideration in law for the transfer of the money to her, and it would become hers; and that if she afterwards

transferred the money back to the deceased for investment, and he took the same, promising to invest it and to account to her therefor, claimant was entitled to recover. *Held*, that the charge was not open to the objection that it gave the jury to understand that the illicit relations between the parties imposed an obligation upon the deceased.

Error to Wayne; Frazer, J. Submitted May 9, 1895. Decided October 8, 1895.

Dollie Frank presented a claim against the estate of William B. Morley, deceased, for money alleged to have been intrusted to him for investment. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. From a judgment for claimant, the executor, Horatio T. Morley, brings error. Reversed.

*Fraser & Gates (Edwin F. Conely,* of counsel), for appellant.

*Atkinson, Vance & Wolcott,* for appellee.

MONTGOMERY, J. William B. Morley died testate on the 15th of June, 1891. The claimant filed a claim before commissioners on claims for $20,000 and interest, claimed to have been intrusted to the deceased on or about the 10th of January, 1880. The claim was disallowed by the commissioners, and an appeal taken to the circuit court, where, on a trial before a jury, claimant recovered $23,000. The executor brings the case here on error.

Claimant made her case by producing as a witness her sister, who testified that on the 10th of January, 1880, claimant was delivered of a bastard child in the city of Detroit; that two or three days after the birth of the child the deceased came to 300 Woodward avenue, where claimant was confined, and gave the claimant $20,000 in bank bills, which he stated was for the support of the child; that claimant retained the money for a few days; that he then wanted the money back, and said he would invest it. She did not want to give it back to him, and he insisted

on it, and she gave it back. She wanted him to invest it in boat property, and he said it would be a scandal, and he would invest it in a better way, or some other way. There was also testimony tending to show that, from time to time, deceased had paid money to claimant. On one occasion he purchased a small farm for her, near Monroe, paying the consideration, and taking the deed in her name. On various occasions he paid sums ranging from $5 and $10 up to $340. There was never any accounting between the parties prior to the death of Mr. Morley, and never any demand for an accounting by the claimant. There was testimony which tended somewhat to corroborate the testimony of the claimant, and there was testimony offered on behalf of the estate which tended to show a course of dealing between claimant and deceased inconsistent with the claim which is now made. There was also testimony tending to show that, during all the period from 1880 to 1891, illicit relations existed between claimant and deceased.

1. It is contended that the claimant has not sought the proper forum. Defendant's first request was as follows:

"If the case made by the claimant correctly shows the relations of the deceased to the claimant in respect to the $20,000 alleged to have been delivered by the claimant to the deceased in January, 1880, the deceased did not become the debtor of the claimant, but rather the trustee, for the purposes of investment; and, there being no *assumpsit*, the claimant cannot enforce her rights in the premises in a proceeding before commissioners on claims, or an appeal from the decision of such commissioners."

This was refused, and the court charged the jury that if she (the claimant) transferred the money back to William B. Morley for the purpose of investing for her, and he did so take the money into his possession, and promised to invest it for her and account for it to her, if they should believe that these facts were established by a preponderance of the evidence in the case, then this would be a just claim against the estate of William B.

Morley, provided some payment had been made on account of the claim within the six years preceding the death of Morley.

It is generally true that equity alone has jurisdiction over proceedings to enforce a trust, but, in case there has been an account stated, a court of law may take cognizance. See Perry, Trusts, § 843. If the trustee has mingled the estate with his, and has kept no account of the same, the *cestui que trust* may proceed against him as a common debtor, and charge him with the value of the estate, with interest added. *Morris* v. *Wallace*, 3 Pa. St. 319; *Coffin* v. *Bramlitt*, 42 Miss. 194. And where, as in this case, the trust estate consisted solely of money, so that nothing remained to be done but the payment of the money, no good reason is perceived why an action at law should not lie. *Lathrop* v. *Bampton*, 31 Cal. 17; Perry, Trusts, § 843; *Sewall* v. *Patch*, 132 Mass. 326. See, also, *Catlin* v. *Birchard*, 13 Mich. 110.

2. Deceased was in 1891 at Rochester, N. Y., receiving medical treatment. For the purpose of corroborating her statement, plaintiff offered in evidence a letter dated April 6, 1891, containing the following:

"Do not get discouraged, and see Lizzie's goods free from debt. I have not been out of the house for several days to take the electrical treatment. Am doing well without it. Say to Emma she can have a new hat as soon as she gets in the new house. I do not know that it would make any difference, but want to see everything is regular in the deed and the title is perfect. Now, I expect to come soon, but, should anything happen to me, I promise to give you a good home and twenty-five thousand dollars, to get along without me. I tell you, I am having a trying time here. If you want twenty-five or fifty to get along, borrow it from Charley; and I am better this morning (April 6th), and am anxious to get back to Detroit. I will try and get this to the P. O. this a. m. Good-bye.

"Your true and loving
"W. B. MORLEY."

This was objected to as not tending to support the claim

of plaintiff that she had in 1880 intrusted to the deceased $20,000 to invest for her. It will be noticed that this letter contains no acknowledgment of any trust or of any indebtedness. It is nothing more than the promise of a gift in the future. Does it follow that because deceased was willing to promise in 1891 to make such liberal provision for claimant, after 11 years of intimacy, that he had the same feeling in 1880, or that he had made her a present of $20,000? We think not. It is evident that the relations of the parties might have induced a sense of obligation or an infatuation on the part of the deceased in 1891 which he did not feel in 1880. We think not only that this testimony did not amount to an acknowledgment of an indebtedness or a trust obligation, but that it had no tendency to support such a claim. The proposition was to *give* claimant a home and $25,000 in money. If the claimant's theory is true, there would be the less occasion for a gift. While it is perfectly clear that plaintiff could not, under the circumstances of this case, recover upon this promise, it cannot be said that a jury might not seize hold of such a promise, and give weight to it. Its admission was therefore prejudicial error. What is said above applies to all testimony which tended to show an intention to make provision for the claimant, not accompanied by any acknowledgment of the receipt from her of the $20,000 as claimed.

3. It is objected that the court erred in its instructions upon the subject of the statute of limitations. We deem it unnecessary to consider this question at length, for the reason that, if plaintiff made a case at all, it was a case of an express trust, and there was no evidence of any fact which set the statute of limitations to running prior to his death. Perry, Trusts, § 863; *Davis* v. *Coburn*, 128 Mass. 377.

4. Claimant called as a witness one Ira G. Humphrey, an attorney at law. He was asked to give a statement made by deceased, about the year 1882, with reference to the paternity of the children of Mrs. Frank. The oc-

casion was a proceeding instituted by Mrs. Frank in the interests of her children, and a petition was being prepared by Mr. Humphrey, in which it was necessary to insert the names of Mrs. Frank's children, who were heirs of her late husband. This was in the presence of both Mrs. Frank and Mr. Morley, and the business was that of Mrs. Frank, although the employment was by Mr. Morley, on her behalf. The communication was not made in any confidence which excluded Mrs. Frank, and under such circumstances the privilege does not exist. *Michael* v. *Foil*, 100 N. C. 178; *House* v. *House*, 61 Mich. 71; *Cady* v. *Walker*, 62 Mich. 158.

5. The circuit judge charged the jury as follows:

"I charge you that if William B. Morley was the father of that child, and had had these illicit relations with Dollie Frank, and in consideration of those facts he gave her $20,000 for the support of herself and her child, that is sufficient consideration in law for him transferring this money to her. If these facts have been proven in this case to your satisfaction, by a preponderance of proof,—that this $20,000 was actually paid over by Mr. Morley, and given by Mr. Morley to Dollie Frank,—then that money became her money, and she had a right to do with it as she pleased. And if you shall further believe that at his request, or by her consent, she transferred this money back to William B. Morley, for the purpose of investing for her, and he did so take the money into his possession, and promised to invest it for her and account for it to her,—if you shall believe that these facts are established by a preponderance of the evidence in this case,—I charge you that then this would be a just claim against the estate of William B. Morley."

It is contended by the defendant that this charge was misleading, as it gave the jury to understand that the illicit relations between the deceased and the claimant imposed an obligation upon the deceased. The circuit judge, however, made the recovery to depend finally upon the question of whether claimant had intrusted to William B. Morley the $20,000 claimed. The illicit relations between this married woman and Mr. Morley, who was

himself a married man, certainly created no legal obligation against him or his estate. If, however, he saw fit to and did give her $20,000, no consideration was required. The money became hers. We should hesitate to disturb the verdict in this case upon the assumption that the jury could have misunderstood these instructions, for we think that the court finally made it very clear that plaintiff's case turned upon the question of whether she actually received the $20,000, and afterwards intrusted it to Mr. Morley to be invested; but, for the error pointed out, the judgment should be reversed, and a new trial ordered.

McGRATH, C. J., LONG and HOOKER, JJ., concurred. GRANT, J., did not sit.