### JONES *v.* HOME SAVINGS BANK.

1. TRUSTS AND TRUSTEES—ACCOUNTING—RECEIPT FRAUDULENTLY OBTAINED.

> Where the trustee of an infant's estate, upon the beneficiary's becoming of age, rendered him an account, and the latter, having no personal knowledge of the transactions, gave his receipt upon the basis fixed by such account, and subsequently, after the trustee's death, it was discovered, upon an examination of the books by an expert accountant, whose finding was given by stipulation the force of that of a referee, that, at the time the receipt was given, a large amount remained in the trustee's hands unaccounted for, the finding so far overcame the *prima facie* effect of the receipt as to leave no room for an inference inconsistent with liability.

2. SAME—LIMITATION OF ACTIONS.

> The fact that money due a *cestui que trust* is allowed by him to remain in the hands of the trustee after the termination of an express trust does not change the nature of the debt, and hence, until an accounting is had or demanded, the statute of limitations does not begin to run.

Error to Wayne; Hosmer, J. Submitted June 14, 1898. Decided September 20, 1898.

Henry K. Jones and Matilda C. Jones presented a claim against the estate of J. Huff Jones, deceased, for a balance due from decedent as trustee under the will of Catherine H. Jones. The claim was allowed by the commissioners, and the Home Savings Bank, a creditor, appealed to the circuit court. From a judgment for claimants on verdict directed by the court, contestant brings error. Affirmed.

*George W. Radford*, for appellant.

*Sidney T. Miller*, for appellees.

MONTGOMERY, J. The hearing below was on an appeal from an allowance of a claim in favor of the appellees by commissioners on claims. On the trial the circuit judge directed a verdict in favor of claimants. The Home Savings Bank, a creditor of the estate, defended against the claim in the circuit court, and has brought error to review the proceedings on the trial.

As the circuit judge directed a verdict, the question presented is whether the testimony was conclusive to sustain the claim presented, or whether, on the other hand, an inference of nonliability could be drawn from the whole testimony. The facts were not much in dispute. A history of the claim is, in brief, as follows: Catherine H. Jones, the grandmother of claimants, died testate, Octobor 18, 1865, bequeathing to J. Huff Jones and Augustus P. Thompson a considerable estate in trust for these claimants, to possess, control, and manage until the younger of the two claimants should attain the age of 21 years; and empowered the trustees to lease, sell, or mortgage any portion of the estate, and to invest the trust property in first-class securities, and to divide the property equally when the younger child should attain the age of 21 years. J. Huff Jones became the active trustee in the

management of the estate.    Henry K. Jones became of age October 30, 1883, and Matilda C. Jones on August 2, 1886.    On August 11, 1886, the trustees deeded to Henry K. and Matilda C. Jones, jointly, all of the real estate held in trust, the active trustee, however, retaining control of the personal estate until March 10, 1888, when the personal property for which he accounted was turned over in equal parts, and a receipt in full given by each of the claimants, purporting to discharge the trustees from liability as trustees.    J. Huff Jones died testate, but insolvent, December 16, 1892,  Shortly after the death of J. Huff Jones, Henry K. Jones for the first time made an examination of the books of J. Huff Jones kept in connection with the books of another trust estate in the hands of J. Huff Jones, and found substantial inaccuracies in the accounts.    This directed his attention to the accounts kept by deceased of the transactions relating to the property of these claimants, and on examination he found inaccuracies in the account.    Further investigation by the claimant and experts resulted in the presentation of the present claim.

After the presentation of this claim, an expert accountant, Mr. John H. Clegg, was employed to examine the books of deceased, and the result of his examination was a finding that there was on the 10th of March, 1888, a balance due the claimants of $25,258.07 over and above the amount accounted for.    A stipulation was entered into between the parties, reading as follows:     .

"It is hereby stipulated and agreed by and between the parties hereto that the examination of the books and accounts of said suit, made by John H. Clegg, at the trial of this cause on appeal, may be treated as though such examination had been made by a referee, under the direction of the court, for the purpose of ascertaining the amount due from J. Huff Jones to claimants, according to the books and papers of J. Huff Jones in the condition they were in at the time of his death, and the amount so found due may be considered the same as if found by a referee; provided, that this stipulation shall not be con-

strued as in any way to prevent the raising of an issue of fact or law based upon any alterations, omissions, or errors which may be found in the original entries and accounts of said J. Huff Jones, deceased, as to any part or all of said account, or of any question concerning the same; or likewise to prevent the raising of an issue of fact or law based upon dealings between claimants and said deceased concerning said claim, or any part thereof.

[Signed] "SIDNEY T. MILLER,
"Att'y for Claimants.
[Signed] "GEORGE W. RADFORD,
"Att'y for Appellant."

In our view, this stipulation left very little to litigate. As regards the amount of the liability, if any existed, if the contestant had been able to show that this amount was incorrect because of omissions and errors or alterations, it was open to it to do so; but we do not think the testimony offered, when analyzed, impeaches the finding of Mr. Clegg. No special errors in the account are pointed out in the brief of appellant's counsel, while the testimony of witnesses for claimants shows very clearly that the changes were made in the books either by J. Huff Jones or his bookkeeper, and in his lifetime.

It is contended by appellant's counsel—

"That it was a question of fact for the jury to determine whether the investigations of Clegg were of sufficient weight and accuracy to show fraud, mistake, or misrepresentation on the part of J. Huff Jones, and thus overthrow the settlement of March 10, 1888, between claimants and J. Huff Jones, by which the former acknowledged payment in full, and released J. Huff Jones from all liability."

We do not agree with this contention. All the testimony in the case was to the effect that neither of the claimants had ever examined into the transactions of deceased as their trustee. There was no pretense that they had personal knowledge of the transactions. It cannot be gainsaid that the receipts on their face show that the trustee had assumed to account for all the avails of their property; and yet at the very date, as appears from the

finding of Mr. Clegg (whose finding is of the force of that of a referee), there was in the hands of this trustee, unaccounted for, more than $25,000. We are all satisfied that the testimony on behalf of claimants not only overcame the evidence afforded by the receipts, but that it left no room for any inference inconsistent with liability.

The point is made that the claimants were barred by the statute of limitations before Mr. Jones' death. As essential to this contention, the counsel for appellant argues that, by the terms of the trust, the same terminated when Matilda C. Jones reached the age of 21 years. But the mere fact that money due the *cestui que trust* is allowed by him to remain in the hands of the trustee does not change the nature of the debt, and, until an accounting was had or demanded, the statute of limitations did not run. 2 Perry, Trusts, § 863 (p. 513, 4th Ed.), and cases cited; *Frank* v. *Morley's Estate*, 106 Mich. 635.

Judgment affirmed.

The other Justices concurred.