## In re BUSH'S ESTATE.

### SIGNS v. BUSH'S ESTATE.

1. CONTRACTS—PROMISES—CONSIDERATION.

A promise made by one person to another for the benefit of a stranger to the consideration will not support an action by the latter.

2. TRUSTS—NOT CREATED BY PAROL—STATUTES.

A claim against the estate of a deceased person for a sum of money which it is claimed that deceased orally promised the mother of the claimant he would bequeath to the latter in consideration of the promisee furnishing him with a part of the purchase price of certain land, cannot be sustained on the theory that the portion of the land represented by the amount furnished was held in trust for the claimant, since under 3 Comp. Laws, § 9509 (3 Comp. Laws 1915, § 11975), a trust in land cannot be created by parol.

3. SAME—RESULTING TRUSTS—STATUTES.

The claim would not be sustained on the theory of the existence of a resulting trust, since the statute, 3 Comp. Laws, § 8835 (3 Comp. Laws 1915, § 11571), provides that "when a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made," etc.

4. SAME—TRUSTS IN PERSONALTY.

The claim could not be sustained on the theory of the existence of a trust in personalty whereby the deceased was to pay the trust fund from the proceeds of the sale of the land at a later time, or of a fund which was not in existence at the time the agreement was made, since no trust could be created in the personalty until the sale of the land, and there was no evidence of any contract or express declaration of trust, written or oral, after such sale was actually made, and the transaction created a mere debt.

5. SAME—PROMISES.

The promise made to bequeath did not create a valid trust

enforceable by the daughter after the promisor's death, but at most was a mere debt, recovery on which may be had by the proper party as claimant.

6. CONTRACTS—JUDICATURE ACT—RETROACTIVE EFFECT.
    Act No. 314, Pub. Acts 1915, chap. 12, § 2, of the judicature act (3 Comp. Laws 1915, § 12353), providing that "every action shall be prosecuted in the name of the real party in interest," etc., cannot be invoked to give to an alleged "real party in interest" a right of action which did not exist at the time of bringing action.

Error to Genesee; Stevens, J. Submitted October 9, 1917. (Docket No. 68.) Decided December 27, 1917.

Grace A. Signs presented a claim against the estate of Charles W. Bush, deceased, for an amount agreed by testator and another should be devised to claimant by will. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. Judgment for contestants on a directed verdict, claimant brings error. Affirmed.

*Ellis & Ellis,* for appellant.

*Clarence Tinker (George W. Cook,* of counsel), for appellee.

The claim which appellant is asserting against the estate of Charles W. Bush arose as follows: In February, 1881, her parents, William H. and Harriet E. Bush, were residing in South Ionia, in a house owned by the latter. At that time claimant's uncle, Charles W. Bush, was desirous of purchasing a certain farm of 100 acres in Sebewa, Ionia county, and of having his brother William and family make their home thereon. Finding that the owner would be willing to take in part payment the house and lot in South Ionia belonging to Harriet E. Bush, he explained his plan to Mr. and Mrs. Bush, and asked the latter to help

him carry out the transaction by deeding her said home, at a valuation of $1,000, promising her that, if she would do so, he would by his will bequeath $1,000, plus a sum equal to interest thereon at the legal rate from the date of the transaction to the time of his death, to her two daughters, or the survivor in case either died leaving no children; if either died leaving children, such children to take her one-half. After some objection, Mrs. Bush agreed to this proposition and deeded her house and lot to the owner of the farm, named Collier, who at the same time deeded the farm to Charles W. Bush for a consideration of $4,500, of which $2,500 was paid in cash by Charles W. Bush, and $1,000 by Mrs. Harriet Bush's house and lot, the balance being taken care of by Charles W. Bush assuming mortgages outstanding on the farm property amounting to $1,000. The arrangement and agreement between Charles W. Bush and Harriet E. Bush was made orally.

It appears that pursuant to an oral agreement between Charles W. and William H. Bush, the latter moved onto the farm with his family and lived there until his death—and the family, or some of them, for a while after his death—paying the taxes, keeping up the interest on the mortgages, making improvements on the property, and having the use and benefit of the farm. Some time after the death of William, however, Charles W. Bush requested the widow, Harriet, to leave the farm, promising her that if she would leave peaceably, and not cause him any trouble, he would buy a smaller place and give her the use of it during her lifetime, and also that he would carry out his agreement relative to bequeathing the $1,000 and interest to her daughters as above set forth. Prior to the death of Charles W. Bush, one of the two daughters of Harriet E. Bush died, leaving no children. The surviving daughter is the claimant,

Grace A. Signs. To the said Grace A. Signs, Charles W. Bush, by his will made in 1906, bequeathed only the sum of $100; said bequest being preceded by the following clause:

"I hereby make the following bequests upon the express condition that they shall be in lieu of and in full payment and satisfaction of all claims, right, title, and interest of the legatees and devisees hereinafter named in and to my estate."

Upon his death, this instrument was admitted to probate as his last will and testament. Mrs. Signs did not take the $100 mentioned in the will, but filed a claim in the probate court for:

"One thousand dollars ($1,000.00), together with interest thereon as follows: At seven (7) per cent. from February 23, 1881, to October 2, 1891; at six (6) per cent. from October 2, 1891, to September 22, 1899; at five (5) per cent. from September 22, 1899, to the date of the above testator's death, less one hundred dollars ($100.00) provided for by testator's will"

—setting up, also, the foregoing facts by way of explanation. The probate court thereupon appointed commissioners on claims, who disallowed the claim, and an appeal to the circuit court resulted in a directed verdict in favor of the estate, upon which judgment was duly entered.

Kuhn, C. J. (*after stating the facts*). We think that the situation here presented is fairly summed up in the brief of counsel for appellee in the following statement:

"Thus we have a contract that Harriet E. Bush conveyed a piece of real estate to Collier, Collier conveyed real estate to Charles W. Bush, and Bush promised to make a will leaving a bequest to two daughters of Harriet E. Bush, or their survivor (strangers to the contract), of one thousand ($1,000.00) dollars,

with legal interest from the date of such conveyance to the date of the death of Charles W. Bush."

The trial judge, after hearing the evidence, on motion duly made, directed a verdict for the defendant, in which he in part said:

"She (referring to Mrs. Bush) furnished the consideration; but the will was not to be made to her, made to her daughters. Her daughters were strangers to the transaction, and I believe it to be the law that no one can maintain an action of this kind upon such a promise, except it be the one who made the contract, and that was the mother of this girl. So, gentlemen, I do not think this plaintiff can maintain the action. I think that is the simple proposition; that she is not a party to the contract. She furnished no consideration. The consideration for the promise of Mr. Bush came through their mother, and the fact she had some talk with them afterwards about it I do not think is material at all. So, gentlemen, your verdict will be in this case that the claim is disallowed, and the clerk will take your verdict without your leaving your seats."

No serious claim is made that a promise made by one person to another for the benefit of a third—a stranger to the consideration—will support an action by the latter, according to the law of this State. See *Linneman* v. *Moross' Estate,* 98 Mich. 178 (57 N. W. 103, 39 Am. St. Rep. 528); *Wheeler* v. *Stewart,* 94 Mich. 445 (54 N. W. 172); *Edwards* v. *Clement,* 81 Mich. 513 (45 N. W. 1107); *Hicks* v. *McGarry,* 38 Mich. 667; *Knights of Modern Maccabees* v. *Sharp,* 163 Mich. 449 (128 N. W. 786, 33 L. R. A. [N. S.] 780); *Edwards* v. *Thoman,* 187 Mich. 361 (153 N. W. 806). But the contention is made that a trust relationship was created by this transaction, and that Charles W. Bush held the $1,000 in money in trust, and that in effect he agreed to invest it and to pay the beneficiary by his will the principal, with legal interest. There is no question raised but that the al-

leged agreement was oral, and that there was no writing to evidence the agreement. Did the oral agreement between Charles Bush and Harriet Bush create a trust whereby Charles Bush was to hold the fund of $1,000 in trust for Grace Signs, the claimant herein?

It is stated in the brief for the appellee that if a trust existed, it must come under one of the following three subdivisions:

"*First.* That that portion of the farm represented by the sum of $1,000 was held in trust for claimant; or

"*Second.* That the title to the farm having been taken in the name of Charles W. Bush, a trust resulted because of the fact that a portion of the purchase price was provided by Harriet E. Bush; or

"*Third.* That a trust in personalty was created by the agreement, whereby Charles W. Bush was to pay the trust fund arising from the proceeds of the sale of the farm at a later time, or of a fund which was not in existence at the time that the agreement was made."

With reference to the first subdivision, we think it·is properly contended that there could be no trust created by parol as to any interest in the real estate, because the statute (4 How. Stat. [2d Ed.] § 11393, 3 Comp. Laws 1915, § 11975) provides that no trust or power over or concerning lands, or in any manner relating thereto, shall be created, granted, assigned, surrendered or declared, unless by act or operation of law or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by some person thereunto by him lawfully authorized by writing.

Neither could a resulting trust be created by parol under the second subdivision, because of the statute (4 How. Stat. [2d Ed.] § 10675, 3 Comp. Laws 1915, § 11571), which provides:

"When a grant or a valuable consideration shall be

made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance." * * *

With reference to the third subdivision, it appears that there is no evidence in this record of any contract or express declaration of trust, written or oral, after the sale of the farm by Charles Bush. No trust could be created in the personalty until the sale of the real estate. This is not a case of a *cestui que trust* suing to recover from the trustee for property which she had turned over to the trustee to be invested for her, as the case of *Frank* v. *Morley's Estate*, 106 Mich. 635 (64 N. W. 577). In this class of cases the verbal agreement was in reference to personalty then in existence and does not present the same situation which is now before us. In the case at bar the evidence does not disclose that there was any agreement whatever about the sale of the Sebewa farm. The contract with Charles Bush was to make a will and leave $1,000 to the two daughters of Harriet E. Bush, or their survivor. Under this contract it was to be done whether he had sold the farm or not, and no reference is made to the proceeds of the sale of the farm, when sold. We conclude that there is no valid and enforceable trust created by the alleged contract. See 39 Cyc. p. 65; *Wellington* v. *Sedgwick*, 12 Cal. 469; *Steele* v. *Clark*, 77 Ill. 471; *Clark* v. *Wright*, 24 S. C. 526; *Billings* v. *Warren*, 21 Tex. Civ. App. 77 (50 S. W. 625); *Marston* v. *Humphrey*, 24 Me. 513. The transaction at most created a mere debt, recovery for which might be had by the proper party as claimant. See 39 Cyc. p. 73.

It is suggested that by virtue of section 2, chap. 12, of the judicature act (Act No. 314, Pub. Acts 1915, 3 Comp. Laws 1915, § 12353), this action could now

be prosecuted by the claimant, as she is the real party in interest. This section provides:

"Every action shall be prosecuted in the name of the real party in interest," etc.

This was not in effect at the time that the claim was filed, and the claim was pending when this law went into force. It is urged that the judicature act is merely a practice act and that a practice act should be held to apply to cases pending when such act went into effect, and the case of *C. H. Little Co.* v. *L. P. Hazen Co.*, 185 Mich. 316 (152 N. W. 95), is referred to, to sustain this contention. We there held that where a statute affects purely the method of applying the remedy to the rights of the parties, and not the rights themselves, even though passed subsequent to commencement of suit, it is fully applicable to all pending cases. But the situation before us is not merely a question of applying the remedy to the rights of the parties, but under the law as it existed at the time this claim was filed, the claimant had no rights arising out of the transaction against the defending estate. To hold that the statute here invoked would sustain appellant's contention would give the claimant a right which she did not possess at the time she filed her claim. If she had had a right or a claim at that time and had pursued an improper remedy, which was subsequently recognized by statute, it would present a similar situation to that referred to in the *Little Case, supra.*

It is further claimed that the contract was in effect assigned by the mother to the claimant, and that a written assignment was made by the mother to the claimant in the affidavit filed by her in support of the claim. We are of the opinion, however, that this affidavit, which recites the history of the transaction, is nothing more than a statement of the legal conclusion

of the mother as to the status of the claim, and should not be construed as an assignment by her to the claimant of any of her rights arising out of the transaction.

We are of the opinion that the judgment of the court below must be and is hereby affirmed.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.