113      75
143     3513

## EIPPER v. BENNER.[1]

1. TRUSTS—ESTATES OF DECEDENTS.

V., after the death of his wife, in order to avoid suit for an accounting in the interest of certain of her heirs, admitted in writing that he had received funds from her to a specified amount, which amount he thereby agreed, pursuant to a confessed understanding with the wife, to bequeath to such heirs. Thereafter V. made a will which was in substantial conformity with his engagement, but such will was destroyed before his death. *Held*, that there was a declaration of trust, entitling the beneficiaries to an allowance of their claim against the estate.

2. SAME—STATUTE OF FRAUDS.

An admission in writing of the existence of a trust resting in parol is sufficient to satisfy the statute of frauds.

3. SAME—PERSONALTY.

The statute of frauds does not apply to a trust in personal property.

Error to Calhoun; Smith, J. Submitted April 29, 1897. Decided May 25, 1897.

Mary Eipper and Julius Nagel presented a claim against the estate of Chris Fred Vogel, deceased, for money alleged to have been held in trust for them. The claim was allowed by the probate judge, acting as commissioner, and Mary E. Benner, administratrix of the estate, appealed to the circuit court. From a judgment disallowing the claim, claimants bring error. Reversed.

*Herbert E. Winsor*, for appellants.

*John E. Foley (Taggart, Knappen & Denison*, of counsel on application for rehearing), for appellee.

---

[1] Rehearing denied July 16, 1897.

HOOKER, J.   In a proceeding before the probate judge of Calhoun county, acting as commissioner, the claim of the claimants was allowed.   Upon appeal the circuit judge reversed the case, and disallowed the claim.   His finding states the facts, and is given in full:

"(1) Claimants are nephew and niece of Mary Vogel, who was the wife of Chris Fred Vogel, deceased.   Julius was born in May, 1866, and his sister, Mary, is about two years younger.   They are the children of a deceased brother of Mary Vogel, and were left orphans in the State of Mississippi, but at what time is not disclosed by the proof, but at a time prior to their coming into the family of Chris Fred Vogel.   Mary Vogel learned of the death of her sister, and that these children were orphans, and took steps to find them, and bring them North, into her family, and did find them, and they lived in the family of herself and husband about six years before her death.

"(2) Claimants had no property, and Mr. and Mrs. Vogel were at some expense in finding them and removing them to their home.

"(3) They were cared for and looked after by the Vogels as members of the family from the time they came into the family; worked out part of the time, and attended school, but not to any great extent.

"(4) At the time of the marriage of Mr. and Mrs. Vogel, he was a widower with one child, who is now living, and in whose interest this claim is contested.   Mrs. Vogel was a widow without children, and died childless.

"(5) At the time of the marriage, Mrs. Vogel had several hundred dollars of property in her own right, consisting of moneys out at interest, and houses and lots in Coldwater, Michigan, where she lived.   Mr. Vogel had some property, and they accumulated some by their labor, and in the management of what they had.   They used their property for the joint interest of both in the care of the family, but investments were made in the name of Mr. Vogel.

" (6) Mrs. Vogel died April 21, 1887, and Gottlieb Kast was appointed her administrator, and proceeded to settle up her estate.   It was appraised at the sum of one thousand eight hundred and eighteen ($1,818) dollars, and consisted principally of real estate owned by her at the

time of her marriage.   The estate was duly closed in probate court, and distributed to her legal heirs, under an order of distribution made by Hon. George Ingersoll, Judge of Probate.

"(7) The heirs at law of Mary Vogel were these claimants, children of a deceased brother, Michael Nagel, a brother, a brother in Germany, a brother in Ohio, and eight or nine children, who were the children of a deceased sister in Germany.

"(8) A day or two after her death, her brother, Michael Nagel, talked with Mr. Vogel about the property of his wife and the relations pertaining to the same as between Mr. and Mrs. Vogel.   It is claimed that this talk was in the interest of claimants.   Claimants knew nothing of the talk, and had no part in it.   Michael was not their legally-appointed guardian, nor was he in any way authorized by them, or by any one, to make any arrangement regarding their interest in the estate of Mrs. Vogel, but acted entirely of his own motives.

"(9) In pursuance of this talk, and before Michael went home, the parties went to the probate court, and Judge Ingersoll, the probate judge of Calhoun county, prepared a paper, which Mr. Vogel signed, and which was in words and figures as follows:

" '*Memoranda* of unsettled matters between Chris Fred Vogel and the estate of Mary M. Vogel, his wife, as follows:  Said Chris Fred Vogel has heretofore received from said Mary M. Vogel the following sums of money, to wit:

| | |
|---|---:|
| One sum of three hundred dollars_____( | $300 00) . |
| One sum of three hundred and fifty dollars_____( | 350 00) |
| One sum of three hundred and seventy-five dollars_____( | 375 00) |
| And one sum of fourteen hundred dollars _____( | 1,400 00) |
| Amounting in all to twenty-four hundred and twenty-five dollars_____ | ($2,425 00) |

—And out of which he paid, at the request of said Mary M. Vogel, one hundred dollars for the benefit of Gottlieb Grimmer, and which leaves a balance of twenty-three hundred and twenty-five dollars ($2,325), and which amount I agree, in pursuance of my understanding with my said wife, to bequeath by my will to Julius Nagel and

Maggie Nagel, minors, now members of the family of Chris Fred Vogel.

"'Dated, Marshall, April 27, 1887.

"'CHRIS FRED VOGEL.

"'In presence of George Ingersoll.'

"This paper was left with Judge Ingersoll, and remained with him till after the death of Mr. Vogel.

"(10) January 31, 1889, Chris Fred Vogel, on petition of Julius Nagel, and while Mr. Kast was acting as administrator of Mrs. Vogel's estate, was cited into probate court to testify as to the property he had belonging to his deceased wife's estate. This examination was in writing before the judge of probate, and was conducted by Hon. John C. Patterson, who represented Mr. Nagel. In this examination he denied owing his wife anything. He admitted he had considerable money, and in fact the amounts set forth in the memorandum, but claimed it had been paid out in various ways at her request. He also denied to Mr. Kast, while he was the administrator of Mrs. Vogel's estate, any liability to her estate or to claimants.

"(11) In December, 1894, Mr. Vogel made a will, in which Julius and Mary, these claimants, were remembered substantially as was set forth they should be in the memorandum made by Judge Ingersoll. The contents of this will rests somewhat in memory and hearsay, and, while not in the exact terms of the memorandum, was as favorable to them as the terms of it would have been.

"(12) This will was destroyed some time after its execution, and was not in existence at the death of Mr. Vogel.

"(13) Mr. Vogel died July 13, 1895, without a will, leaving as his only heir his daughter, Elizabeth. Administration was granted to his daughter. His property was appraised at six thousand five hundred and ninety-seven dollars ($6,597).

"(14) Claimants file a claim against his estate, which was the memorandum set forth in the ninth finding of fact herein, and to which was attached the following:

MARSHALL, MICH., Nov. 13, 1895.

Estate of CHRIS FRED VOGEL, Dr.,

To JULIUS NAGEL and MARY NAGEL EIPPER.

To the above claim_____$2,425 00

Interest to date if allowed.

"Law.

"Claimants have no legal claim against the estate of Chris Fred Vogel, and cannot recover. It should be certified back to the probate court for Calhoun county that this claim is disallowed, with costs to be taxed.

"Dated August 15, 1896.

"CLEMENT SMITH, Circuit Judge."

The only question that seems to be raised by the brief of appellants goes to the merits,—can the order be sustained upon the finding of fact? The finding conclusively shows that Chris Fred Vogel unqualifiedly admitted in a most solemn manner that he had money belonging to his wife to the amount of $2,425, and that he had an understanding with his wife, before her death, that he was to bequeath it to the claimants, who were her nephew and niece. Not only does it appear that he admitted that he made this promise, but that he made the writing in which the admission appears as a means of avoiding an accounting for this property belonging to his wife at a time when her brother, one of her heirs, required it as a condition that the heirs should not compel such accounting; and it was shown that he made a will substantially in accordance with his admitted promise, which was destroyed some time after its execution, and before his death. The circuit judge was of the opinion that the admission of an "understanding" with his wife was not the admission of a promise, and that, if it can be said to amount to a promise, it was not based upon a consideration, because neither Mr. nor Mrs. Vogel was under any obligation to the claimants which would amount to a valid consideration. It is clear that the judge found that Vogel admitted that he had the sum claimed of his wife's property, and that he had promised her to leave it to these children at his death. We are of the opinion that the facts found show that Vogel held this money in trust for these children by arrangement with his wife, and after his death it was the duty of the administrator to pay it over to them, upon allowance by the probate court. *People* v. *Wayne Circuit Court,* 11 Mich. 393, 404 (83 Am. Dec. 754);

*Wheeler* v. *Arnold*, 30 Mich. 304; *Nester* v. *Ross'*
*Estate*, 98 Mich. 200; *Frank* v. *Morley's Estate*, 106
Mich. 635.

This trust, though it be said that it rested in parol, was
admitted in writing, which was sufficient to satisfy the
statute of frauds. *Patton* v. *Chamberlain*, 44 Mich. 5.
But it would seem that the statute of frauds has no appli-
cation, inasmuch as the trust fund was personalty.
*Bostwick* v. *Mahaffy*, 48 Mich. 342; *Calder* v. *Moran*,
49 Mich. 14; *Chadwick* v. *Chadwick*, 59 Mich. 87;
*Bowker* v. *Johnson*, 17 Mich. 42; *Penny* v. *Croul*, 76
Mich. 471.

The order of the circuit judge is reversed, and that of
the probate court affirmed, with costs of both courts to the
claimants against the estate. It will be so certified to the
circuit and probate courts.

The other Justices concurred.