PITCHER *v.* ROGERS' ESTATE.

1. TRUSTS—EVIDENCE—SUFFICIENCY.
  In an action on a claim against an estate for money received by decedent from his wife, the mother of plaintiff, under alleged arrangement whereby deceased was to pay the money to plaintiff on his wife's death, evidence *held*, to sustain a verdict for plaintiff.

2. SAME—RIGHT OF ACTION—TERMINATION OF TRUST.
  Where money is received by a husband from his wife to be

paid to the latter's son upon her death, a right of action to recover the money after refusal of payment arises at the time of the death of the mother.

3. SAME—REPUDIATION—NOTICE—LIMITATION OF ACTIONS.

As a general rule, the statute of limitations has no application in case of an express trust, and, as against an express and continuing trust, the statute does not run until repudiation by the trustee and knowledge thereof is brought home to the *cestui que trust.*

4. SAME.

Although the trustee used the money on his own property, for his own use, as contemplated, instead of making investments in the usual securities for trust funds, there was no such repudiation of the trust by the trustee as to set the statute of limitations in motion.

5. SAME—ENFORCEMENT—CLAIM AGAINST TRUSTEE'S ESTATE.

A suit in equity is unnecessary where a fixed sum is due from the estate of a trustee to one to whom he had agreed to make payment at a certain time, and a claim may be filed against the trustee's estate.

6. SAME—EVIDENCE—PRESUMPTIONS.

The maxim *"omnia præsumuntur contra spoliatorem"* is applicable where a trustee wilfully destroys a written declaration of trust.

Error to Kent; Brown, J. Submitted October 11, 1917. (Docket No. 92.) Decided December 27, 1917.

Roy Pitcher presented a claim against the estate of John Rogers, deceased, for a sum held in trust. The claim was allowed by the commissioners, and the Grand Rapids Trust Company, administrator, appealed to the circuit court. Judgment for claimant. Contestant brings error. Affirmed.

*Clapperton, Owen & Hatten,* for appellant.

*Dorr Kuizema* and *Smedley & Linsey,* for appellee.

FELLOWS, J. The administrator of the estate of John Rogers, deceased, brings up for review a judg-

ment for $592.37, rendered in favor of Roy Pitcher on a claim presented by him. Roy Pitcher is the son of Seymour and Ella Pitcher. They were divorced November 27, 1885, when plaintiff was 3½ years old. In settlement of their property matters Mr. Pitcher gave his wife $500 in cash. It is the claim of the plaintiff that this $500 was given to his mother with the understanding that she should have the use of it during her lifetime, and at her decease it should go to him. The testimony of plaintiff's grandfather, who was present when the money was paid, tended to support this claim. Plaintiff claims that his mother thereby became trustee of the fund. The estate denies that the $500 was given the mother with this understanding, but insists that it was given outright to her. The testimony of plaintiff's father tends to support this claim. She invested the money in ten acres of land, called in the record the Lisbon property. Later she married decedent, and in 1904 sold the Lisbon property. It is the claim of plaintiff that she, upon the importunities of her husband, turned over to deceased this $500 with the understanding and agreement that he should pay that sum to plaintiff at her decease, and that Mr. Rogers used this money in part to improve his farm at Allendale and in part for his personal use. It is the claim of plaintiff that, even though this fund was not impressed with a trust when it came to the hands of his mother, it was so impressed when it came to the hands of decedent, and was taken under an express agreement to pay at her death; that at some time, the exact date not appearing, deceased signed a paper evidencing the arrangement. March 2, 1908, deceased traded his Allendale farm for property situated in Grand Rapids, consisting of a lot with two houses, taking the title in himself and wife. They moved to Grand Rapids, where Mrs. (Pitcher) Rogers died July 3, 1913, and Mr. Rogers January 11, 1916.

It is first urged that the plaintiff failed to make out a case for the jury, and that the court should have directed a verdict for the estate. As we have already stated, plaintiff's grandfather gave testimony tending to support plaintiff's theory of the original arrangement between his father and mother, with reference to the $500. The plaintiff also called as a witness a Mrs. Wilmarth, who for six years occupied the small house owned by the parties in Grand Rapids in the rear of their home. She testified that she had frequent conversations with them; that on one occasion when they were cleaning out the attic, about a year before Mrs. Rogers' death, she showed her some papers in a little basket and informed her that they were valuable. She also testified to what took place on a later occasion. We quote briefly from her testimony:

"* * * We all stood close, and she showed me the paper; she came and brought it out of the bedroom. I don't suppose I can say what remark I made?

"Q. Yes; if her husband was there.

"A. He was right there. I says, 'I thought that was upstairs.' She says, 'No; it is there, paper there, showing'—

"Mr. Owen: I object to the conversation.

"A. 'That there is $500 that Roy is to have when I die.' And I says, 'Well, have you got Mr. Rogers' signature to it?' I was always worried about that, for I had trouble. She says, 'Yes.' She wanted me to read the paper, but I hadn't got time, and she held up the paper. I saw it with my own eyes. Mr. Rogers says, 'We cannot give that to Roy when you died if you die before I die, because we have got to wait until we both die, and then Roy will get this.'

"Q. Did she say when he would get it?

"A. She said not until she was dead, and he said not until they were both dead.

"Q. Did she tell you that in his presence?

"A. Yes, sir.

"Q. Where did she say that money came from?

"*A.* It came from her first husband.
"*Q.* For whom?
"*A.* To be for Roy when she was dead."

She also testified that she saw the signature of Mr.
Rogers on this paper, and that it was his handwriting, the same as he signed to receipts for rent, and
that Mr. Rogers admitted signing the paper; that
after Mrs. Rogers' death Mr. Rogers burned up some
papers from the attic, and about a week later told
her:

"I burned up every one of those papers, and the
damned fool won't get a cent (referring to plaintiff)."

The jury answered affirmatively the following questions:

"Did John Rogers receive the sum of $500 from
Ella Rogers, and agree with her to pay the same to
Roy H. Pitcher at Ella Rogers' death?
"Do you find that a written agreement was made
with Mrs. Rogers binding the deceased to pay to Roy
Pitcher the sum of $500 after her death?"

When we take the testimony of Mrs. Wilmarth in
connection with all that appears in this record, it is
clear that not only was a case made for the jury, but
that the verdicts, both general and special, are not
against the weight of the evidence. The case is not
unlike that of *Eipper* v. *Benner,* 113 Mich. 75 (71 N.
W. 511). In that case the wife of decedent had intrusted to him certain property with the understanding that he should will it to her nephew and niece.
It was there said:

"The circuit judge was of the opinion that the admission of an 'understanding' with his wife was not
the admission of a promise, and that, if it can be said
to amount to a promise, it was not based upon a consideration, because neither Mr. nor Mrs. Vogel was
under any obligation to the claimants which would
amount to a valid consideration. It is clear that the
judge found that Vogel admitted that he had the sum

claimed of his wife's property, and that he had promised her to leave it to these children at his death. We are of the opinion that the facts found show that Vogel held this money in trust for these children by arrangement with his wife, and after his death it was the duty of the administrator to pay it over to them, upon allowance by the probate court."

Defendant invokes the statute of limitations. It is not available. The money was not due until the death of plaintiff's mother, which occurred in 1913. *Havens* v. *Church*, 104 Mich. 135 (62 N. W. 149). The general rule is well recognized that the statute of limitations has no application in the case of an express trust. As against an express and continuing trust, the statute does not run until repudiation by the trustee and knowledge thereof brought home to the *cestui que trust. Shepherd* v. *Shepherd's Estate*, 108 Mich. 82 (65 N. W. 580). As to repudiation by the trustee it is said by Mr. Perry in his work on Trusts and Trustees, vol. 2 (6th Ed.), § 864:

"It has been held, however, that if a trustee repudiates the trust by clear and unequivocal acts or words, and claims thenceforth to hold the estate as his own, not subject to any trust, and such repudiation and claim are brought to the notice or knowledge of the *cestui que trust* in such manner that he is called upon to assert his equitable rights, the statute will begin to run from the time that such knowledge is brought home to the *cestui que trust,* and he will be completely barred at the end of 20 years, if he has been *sui juris,* or under no disability, and is capable of bringing an action to maintain his right. To enable a trustee, without giving up the possession, to turn it into an adverse holding against the *cestui que trust,* the evidence must be clear and unmistakable, and such adverse claim must be brought home to the *cestui que trust* beyond question or doubt. The attitude of the trustee must be hostile, and continuously so; and there must be no mistake or misapprehension as to the character of his holding by either party."

There is no testimony in this record that deceased ever, to the knowledge of the plaintiff, repudiated or denied the arrangements which amounted to a trustee-ship. In fact, there is no testimony that he ever expressed a disinclination to carry it out until after his wife's death and he had destroyed the written evidence of it. The fact that he used the money on his own property, or for his own use, did not amount to such repudiation as to set the statute in motion. It is nowhere claimed that it was contemplated by the parties that he should only invest this fund in such securities as trust funds are usually invested in, but, on the contrary, the testimony shows it was contemplated that he should use it as he did, and account for it at his wife's death. He cannot now claim the benefit of the statute, because he used it as was contemplated and did not invest it in the usual securities for trust funds.

Nor is there force in defendant's contention that the proceedings should be instituted in a court of equity. No accounting was necessary. The trust estate consisted solely of money due the *cestui que trust;* it was a fixed sum, and there was nothing remaining to be done except the payment of that sum. There was no infirmity in the way of presenting his claim for this money to the commissioners on claims. *Frank* v. *Morley's Estate,* 106 Mich. 635 (64 N. W. 577) ; *Eipper* v. *Benner, supra.*

Error is assigned on the following instruction found in the charge of the court:

"If you find that there was a certain instrument in writing executed by the deceased, John Rogers, showing that he was indebted to plaintiff in the sum of $500, as claimed by plaintiff, and if you find that deceased burned and destroyed this written instrument, then you have a right to take the fact of the destruction of this written instrument into consideration in passing upon the liability of the deceased to plaintiff for the said sum of $500."

In this instruction the court went no farther than the authorities justify if he went as far. One who wilfully destroys documentary evidence of a controversy in which he is interested cannot complain if courts give such act the inferences that naturally follow it, or the unfavorable presumptions that naturally arise. This is but the application of the maxim, *"omnia præsumuntur contra spoliatorem."* In speaking of a trustee who had destroyed the declaration of trust, it was said in *Jones v. Knauss,* 31 N. J. Eq. 609:

"His position is one where he is liable to the most unfavorable presumptions. He has unquestionably betrayed his trust and the court is bound to apply to him the maxim, *'In odium spoliatoris omnia præsumuntur.'* If a person is proved to have destroyed a written instrument, a presumption arises that, if the truth had appeared, it would have been against his interest, and that his conduct is attributable to his knowledge of this circumstance, and accordingly slight evidence of the contents of the instrument will usually in such a case be sufficient."

The rule is thus stated in Jones on Evidence (2d Ed.), § 18:

"The wilful destruction, suppression, alteration, or fabrication of documentary evidence properly gives rise to the presumption that the documents, if produced, would be injurious to the one who has thus hindered the investigation of the facts."

See, also, *Murray v. Lepper,* 99 Mich. 135 (57 N. W. 1097); *Sullivan v. Sullivan,* 188 Mass. 380 (74 N. E. 608); *"Joannes" v. Bennett,* 5 Allen (Mass.), 169 (81 Am. Dec. 738).

Finding no error upon this record, the judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.