TEEL v MEREDITH

Docket No. 280215. Submitted January 13, 2009, at Detroit. Decided July 2, 2009, at 9:05 a.m.

Ricky Teel, individually and as personal representative of the estate of Lillian Teel, deceased, brought an action in the Wayne Circuit Court against Doris Meredith, the owner and landlord of an apartment that the Teels rented and that was damaged in a fire in which Lillian died and Ricky was injured. The plaintiff alleged that Meredith failed to maintain the apartment in a safe condition. The plaintiff also named as a defendant Allstate Insurance Company, which insured the apartment pursuant to a policy issued to Meredith, alleging, in part, that an investigator for the insurer altered the scene and removed certain items from the apartment, thereby allegedly spoiling the evidence concerning the origin and the cause of the fire and affecting the plaintiff's ability to successfully bring litigation relating to the fire. Allstate moved for summary disposition, alleging that Michigan does not recognize spoliation of evidence as a valid cause of action. The court, Michael F. Sapala, J., granted the motion and dismissed the claims against Allstate with prejudice. The plaintiff appealed that order.

The Court of Appeals *held*:

The trial court did not err by granting summary disposition for Allstate on the basis that the plaintiff failed to state a claim on which relief can be granted. Michigan does not recognize a cause of action for the spoliation of evidence. The plaintiff failed to articulate any basis for imposing a specific duty on Allstate to preserve or maintain the evidence. Absent an articulable, legally recognized duty, there can be no cause of action for the alleged tort of spoliation of evidence.

Affirmed.

DAVIS, J., dissenting, stated that spoliation of evidence is recognized as a legally wrongful act. There is a well-established right of a litigant in Michigan to the integrity of evidence in a lawsuit. It follows that courts are empowered and obligated to provide a remedy for violations of that right. The reason that the Court of Appeals should recognize a cause of action for spoliation of evidence is that, where the spoliator is not already a party, there

is simply no other way to provide a remedy for the invasion of the recognized right to that evidence. Where an individual's ability to pursue or defend an action has been impaired by a third party's willful or negligent spoliation of evidence, that individual should be able to pursue a tort action against the spoliator. This would not create new rights, but merely provide a means of protecting rights already recognized in Michigan. The order of the trial court should be reversed.

TORTS — SPOLIATION OF EVIDENCE — ACTION FOR SPOLIATION OF EVIDENCE.

Michigan does not recognize a cause of action for the spoliation of evidence.

*Fabian, Sklar & King, P.C.* (by *Stuart A. Sklar*) (*Donald M. Fulkerson*, of counsel), for Ricky Teel.

*Garan Lucow Miller, P.C.* (by *David M. Shafer* and *Frederick B. Plumb*), for Allstate Insurance Company.

Before: SAAD, C.J., and DAVIS and SERVITTO, JJ.

SERVITTO, J. Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant Allstate Insurance Company. Because Michigan does not yet recognize as a valid cause of action spoliation of evidence that interferes with a prospective civil action against a third party, we affirm.

Plaintiff initiated this action after a fire broke out in his family's rented apartment, causing the death of his wife, Lillian Teel, and extensive damage to the apartment. Allstate, the liability insurer for the property pursuant to a policy issued to defendant Doris Meredith, the owner/landlord of the apartment, sent a representative to the apartment, without notice to or the presence of plaintiff, to inspect the apartment. Apparently, during the inspection, the investigator altered the scene and removed certain items from the apartment, thereby allegedly spoiling evidence concerning the origin and cause of the fire and affecting

plaintiff's ability to bring, or succeed in, litigation relating to the fire. In his complaint, plaintiff alleged that defendant Meredith breached her duty to maintain safe premises. Plaintiff also alleged that defendant Allstate failed to, among other things, notify plaintiff of its intended inspection of the premises as required by statute, properly document and preserve the fire scene and the evidence, and avoid spoliation of the evidence. Allstate moved for summary disposition pursuant to MCR 2.116(C)(8), and the trial court granted the motion, ruling, in part, that Michigan does not recognize spoliation of evidence as a valid cause of action.

On appeal, plaintiff asserts that the trial court erred by granting summary disposition because the complaint presented sufficient allegations to establish a claim of intentional or negligent spoliation of evidence that interferes with a civil action against a third-party and that Michigan should recognize the same as an actionable tort. We disagree.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition pursuant to MCR 2.116(C)(8). *Kisiel v Holz*, 272 Mich App 168, 170; 725 NW2d 67 (2006). Where summary disposition is sought pursuant to MCR 2.116(C)(8), "the motion tests whether the complaint states a claim as a matter of law, and the motion should be granted if no factual development could possibly justify recovery." *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006). When reviewing such a motion, "all well-pleaded allegations are accepted as true, and construed most favorably to the nonmoving party." *Wade v Dep't of Corrections*, 439 Mich 158, 162-163; 483 NW2d 26 (1992).

In arguing that the trial court erred, plaintiff cites *Panich v Iron Wood Products Corp*, 179 Mich App 136;

445 NW2d 795 (1989). *Panich* (which is not binding precedent pursuant to MCR 7.215, because it was decided before November 1, 1990) held that a cause of action arising out of the alleged spoliation of evidence, under the facts before it, was not recognized in Michigan. Plaintiff asserts that the factual circumstances in this case, however, warrant the recognition of such a cause of action.

The function of this Court is to correct errors. *Burns v Detroit (On Remand)*, 253 Mich App 608, 615; 660 NW2d 85 (2002). As stated above, MCR 2.116(C)(8) provides that summary disposition is appropriate where a party fails to state a claim for which relief can be granted. Here, no error occurred where the lower court granted summary disposition after plaintiff's complaint alleged a cause of action that has not been recognized in Michigan. Although plaintiff now invites this Court to legally recognize the cause of action and to reverse and remand, we decline to do so.

As Justice WEAVER has stated in a concurring opinion, "[t]he legislative power includes the power to create new legal rights. And, where the Legislature chooses, it may exercise its discretion to create and define new causes of action." *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 668-669; 684 NW2d 800 (2004). See, also, *Phillips v Mirac, Inc*, 470 Mich 415; 685 NW2d 174 (2004). While it is true that this Court may determine as a matter of law whether a duty is owed, our Supreme Court has also noted that in certain instances it is preferable for a duty to be statutorily declared. *Harts v Farmers Ins Exch*, 461 Mich 1, 12; 597 NW2d 47 (1999). We believe that this is one of those instances.

There are certainly considerations that would support the recognition of an independent tort claim for

spoliation of evidence. There is no doubt, for instance, that the preservation of evidence is a compelling policy consideration and that the destruction of crucial evidence may undermine the fairness of an underlying lawsuit and the justice sought to be achieved. However, there are also countervailing policy considerations that weigh against the adoption of a tort for spoliation of evidence.

The traditional response to the problem of evidence spoliation frames the alleged wrong as an evidentiary concept, not as a separate cause of action. The proposed cause of action carries with it many potential concerns and effects, resulting in more complications than clarifications. For example, the scope of a duty to preserve evidence would need to be defined. It would be unreasonable to impose a boundless scope of duty to preserve evidence, particularly where the spoiler of evidence is a third party, i.e., not a party alleged to have committed the wrong that serves as the basis for the underlying or potential litigation. The extent and the amount of damages in a spoliation case are also highly speculative, because it is impossible to know what the destroyed evidence would have shown, and there is no way to determine whether a plaintiff would have had a significant possibility of success in the potential civil action if the evidence were available. It would prove difficult for a trier of fact to meaningfully assess what role the missing evidence would have played in the determination of the underlying action and, if the evidence would not actually have helped to establish a plaintiff's case, an award of damages for its destruction would work as a windfall to the plaintiff.

The Legislature would have the resources and tools needed to investigate the consequences of the proposed cause of action and to study the long-term effects of the

cause of action in the jurisdictions that have recognized it. We leave it to the Legislature to do so, should it choose. Because plaintiff has not established that the lower court committed error, and because the Legislature is the body best suited to creating new causes of action, plaintiff is not entitled to relief.

Contrary to the dissent's assertions, by permitting this case to proceed, we would not simply be recognizing the existence of a legal "duty"[1] on the part of the insurance industry, but we would be creating a new cause of action in this state, which would necessarily require us to define which parties may bring a cause of action and within what time limits, how a plaintiff may establish a prima facie case, and what remedies would be available. Not only is the Legislature in a superior position to gather information regarding the propriety of such changes in the law, public policy dictates against our creation of an entirely new cause of action where the Michigan Legislature has taken upon itself to comprehensively regulate the insurance industry. Indeed, our insurance statutes contain more than 1,000 sections, showing a clear intent by the Legislature to define the parameters and regulate the conduct of those conducting business in this arena as well as the rights and remedies available to the public. See *Harts*, 461 Mich at 11-12. To that end, we are mindful of our Supreme Court's observations in *Henry v Dow Chem Co*, 473 Mich 63, 88-89; 701 NW2d 684 (2005):

---

[1] The dissent mistakenly conflates the ordinary job of a common-law judge to decide whether there is a legal "duty" in the first instance in a garden variety tort case with the much different question before us: whether the state of Michigan should create an entirely new cause of action in an arena, insurance, that is comprehensively regulated by the Legislature.

Although the caution engendered by our difficulty in identifying, much less weighing, the potential costs and benefits of a decision in plaintiffs' favor is an important factor militating against recognizing plaintiffs' proposed cause of action, there is a stronger prudential principle at work here: the judiciary's obligation to exercise caution and to defer to the Legislature when called upon to make a new and potentially societally dislocating change to the common law.

Ours, after all, is a government founded on the principle of separation of powers. In certain instances, the principle of separation of powers is an affirmative constitutional bar on policy-making of this Court. In other cases, however, the separation of powers considerations may operate as a *prudential* bar to judicial policy-making in the common-law arena. This is so when we are asked to modify the common law in a way that may lead to dramatic reallocation of societal benefits and burdens. [Emphasis in original.]

Were we persuaded to ignore the Legislature's pervasive role in this area of law and feel inclined to create a new cause of action, prudence would counsel against it because such a significant departure from Michigan law should only come from our Supreme Court, not an intermediate appellate court. See *Dahlman v Oakland Univ*, 172 Mich App 502, 507; 432 NW2d 304 (1988).

Moreover, if we were to adopt the reasoning of the dissent and recognize an independent cause of action for spoliation of evidence as merely a remedy for a violation of the already-established right to the preservation of evidence, we would nevertheless decline to find such remedy appropriate under the specific facts and circumstances before us. First, there are remedies available to a party claiming prejudice resulting from the loss or destruction of evidence. When a party destroys or loses material evidence, whether intentionally or unintentionally, and the other party is unfairly prejudiced because it is unable to challenge or respond

to the evidence, a trial court has the inherent authority to sanction the culpable party to preserve the fairness and integrity of the judicial system. *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997). There is also a general rule that if a party intentionally destroys evidence that is relevant to a case, a presumption arises that the evidence would have been adverse to that party's case. *Ward v Consolidated Rail Corp*, 472 Mich 77, 84; 693 NW2d 366 (2005).

We acknowledge that there is a distinction between the destruction of evidence by a party to the underlying litigation and spoliation of evidence by a third party in that not all the litigation-related remedies for spoliation are applicable to third parties. However, as aptly observed in *Dowdle Butane Gas Co, Inc v Moore*, 831 So 2d 1124, 1132 (Miss, 2002):

> The victim of third party spoliation, however, is not entirely helpless. Some discovery sanctions are available to punish third party spoliation, including monetary and contempt sanctions against persons who flout the discovery process by suppressing or destroying evidence. A criminal sanction remains available under Penal Code section 135, as are disciplinary sanctions against attorneys who may be involved in spoliation. As we have pointed out, the victim of third party spoliation may deflect the impact of the spoliation on his or her case by demonstrating why the spoliated evidence is missing. It also may be possible to establish a connection between the spoliator and a party to the litigation sufficient to invoke the sanctions applicable to spoliation by a party. We do not believe that the distinction between the sanctions available to victims of first party and third party spoliation should lead us to employ the burdensome and inaccurate instrument of derivative tort litigation in the case of third party spoliation. We observe that to the extent a duty to preserve evidence is imposed by statute or regulation upon the third party, the Legislature or the regulatory body that has imposed this duty generally will possess the authority to devise an effective sanction for

violations of that duty. To the extent third parties may have a contractual obligation to preserve evidence, contract remedies, including agreed-upon liquidated damages, may be available for breach of the contractual duty. Criminal sanctions, of course, also remain available.

Where, as here, a plaintiff has not alleged or demonstrated a complete lack of an available remedy for the spoliation of evidence by a third party, we decline to announce an as-yet unrecognized cause of action as the single appropriate remedy.

In addition, very few states recognize spoliation of evidence as an independent tort, and those that do have not only faced considerable disapproval, but have varied among themselves in the parameters and application of such a tort. Notably, the state generally acknowledged as providing the origin of a distinct cause of action for the tort of spoliation of evidence, California (in *Smith v Superior Court of Los Angeles Co*, 151 Cal App 3d 491; 198 Cal Rptr 829 [1984]), has recently moved away from its prior holding. In *Cedars-Sinai Medical Ctr v Superior Court of Los Angeles Co*, 18 Cal 4th 1, 17-18; 74 Cal Rptr 2d 248; 954 P2d 511 (1998), the California Supreme Court expressly disapproved of *Smith* and held that "there is no tort remedy for the intentional spoliation of evidence by a party to the cause of action to which the spoliated evidence is relevant, in cases in which, as here, the spoliation victim knows or should have known of the alleged spoliation before the trial or other decision on the merits of the underlying action."

More recently, in *Temple Community Hosp v Superior Court of Los Angeles*, 20 Cal 4th 464; 84 Cal Rptr 2d 852; 976 P2d 223 (1999), the California Supreme Court held that no tort cause of action will lie for intentional third-party spoliation of evidence. In reaching its decision, the court opined:

> [T]he burdens and costs of recognizing a tort remedy for
> third party spoliation are considerable—perhaps even
> greater than in the case of first party spoliation. The same
> burdens identified in *Cedars-Sinai* exist, namely, jury con-
> fusion and the potential for abuse in bringing the action
> and for inaccurate and arbitrary verdicts, magnified by the
> potential for punitive damages, as well as the obvious
> burden to the judicial system, litigants, and witnesses,
> inherent in derivative litigation. Beyond these burdens, in
> the case of third party spoliation additional burdens arise
> from the circumstance that the class of potential plaintiffs
> and defendants is greatly expanded. As noted, *both* parties
> in the underlying litigation may be injured by a third
> party's single act of destruction of evidence, thereby giving
> rise to two claims with potentially inconsistent or duplica-
> tive verdicts. . . . In addition, although spoliation claims
> between parties have an inherently limited number of
> potential *defendants*, if spoliation by nonparties were ac-
> tionable in tort, the cast of potential defendants would be
> much larger. We believe the broad threat of potential
> liability, including that for punitive damages, might well
> cause numerous persons and enterprises to undertake
> wasteful and unnecessary record and evidence retention
> practices. [*Id.* at 476 (citation omitted; emphasis in origi-
> nal).]

Given that the majority of states recognizing a cause of
action for spoliation of evidence generally relied heavily
on California's now disapproved-of *Smith v Superior
Court* case, the strength and longevity of the other
states' opinions are in question. Moreover, while we are
certainly not bound by out-of-state decisions, we do find
the rationale employed in *Temple* compelling.

In any event, the states recognizing such a cause of
action appear to base their recognition on a few key,
interrelated factors: exclusive possession of the evi-
dence by the person or company that ultimately de-
stroys the evidence; knowledge of a potential lawsuit
involving the evidence; and a specific duty to preserve

the evidence. For example, in *Boyd v Travelers Ins Co*, 166 Ill 2d 188, 191; 652 NE2d 267 (1995), Tommie Boyd filed a claim for workers' compensation benefits against his employer and his employer's workers' compensation insurer for injuries he received when a portable heater Boyd owned exploded while he was working inside his employer's van. Employees of the workers' compensation insurer took possession of the heater and transported it to the insurer's office for the express purpose of investigating Boyd's workers' compensation claim. Subsequently, when Boyd asked that the heater be returned to him, the insurer was unable to locate it. The Illinois Supreme Court held that because the insurer's employees knew that the heater was evidence relevant to future litigation, the insurer assumed a duty to preserve the heater. Because it failed to do so, an action for negligent spoliation could be stated under existing Illinois negligence law. *Id.* at 195.

In *Thompson v Owensby*, 704 NE2d 134, 136 (Ind App, 1998), a dog broke free from the cable restraining it in its owners' yard and attacked a child, causing her serious injuries. The child's parents sought compensation from the dog's owners and the dog's owners' landlord. The landlords' insurer investigated the plaintiffs' claim and, in doing so, took possession of the cable. The insurer promptly lost the cable, before anyone had the opportunity to inspect it. The Indiana Court of Appeals noted:

> A liability carrier like the Insurance Company can rationally be held to understand that once a claim is filed, there is a possibility of litigation concerning the underlying injuries. The Insurance Company's knowledge and investigation of the Thompsons' claims and its possession of what would be a key item of evidence in the event litigation ensued created a relationship between the Company and

the Thompsons that weighs in favor of recognizing a
cognizable duty to maintain evidence.

   . . . Further, the foreseeability of the harm in losing
evidence can be inferred from the allegation that the
Company's investigator took possession of the cable: if an
insurance carrier's investigator deems certain evidence
important enough to be collected, it is foreseeable that loss
of the evidence would interfere with a claimant's ability to
prove the underlying claim. [*Id.* at 137-138.]

See, also, the Alabama case of *Smith v Atkinson*, 771 So
2d 429 (Ala, 2000).

Here, assuming that Allstate was aware of a potential
lawsuit at the time it inspected plaintiff's apartment, it
did not have exclusive possession of the fan or lamp that
plaintiff alleges may have caused the fire. It should be
noted that before Allstate's investigation of the scene,
the Detroit Fire Department's arson section and the
Michigan State Police investigated and prepared re-
ports concerning the fire. The arson section's investi-
gative report concluded that the fire originated within a
leather loveseat in the living room of the apartment.
However, the cause of the fire was listed as "undeter-
mined" by both the Detroit Fire Department and the
Michigan State Police. Approximately one week after
the fire, the fire investigator hired by Allstate per-
formed his inspection. The Allstate investigator never
removed the fan or the lamp from the apartment and
only removed two smoke detectors, some fire debris,
and a carpet sample. The investigator did not believe
that either the fan or the lamp had been a source of
igniting the loveseat. Allstate maintains that the items
collected by the investigator have been preserved, al-
though plaintiff has never requested to see them.
Where Allstate was at least the third entity to inspect
the apartment and at no time removed or otherwise
took possession of the items plaintiff now alleges may

have caused the fire,[2] it seems unreasonable to hold
Allstate liable for the spoliation of such items. Further-
more, there is no allegation that plaintiff's representa-
tives were barred from the premises.[3] While we recog-
nize that a tragedy had just occurred in the Teel family,
it appears that someone on behalf of the family could
have had equal access to the apartment to inspect and
preserve any potential evidence.

With regard to a cognizable duty to preserve evi-
dence, as previously discussed, we believe that identify-
ing the existence and parameters of such a duty is best
left to our Legislature. Other states have recognized a
duty to preserve evidence where there has been a
voluntary undertaking to preserve the evidence or a
promise to maintain the evidence (see, e.g., *Smith v
Atkinson*) or where special circumstances surrounding
the relationship of a potential plaintiff with a holder of
evidence exist. While plaintiff contends that a special
relationship between Allstate and plaintiff was created
by virtue of Allstate's undertaking to investigate the
scene, plaintiff's reliance on *Thompson* to support this
conclusion is misplaced. Instrumental in the *Thompson*
court's determination that the insurer had a duty to
preserve evidence was the fact that the insurer took
exclusive possession of the potential evidence.

Plaintiff has not articulated any basis for imposing a
specific duty on Allstate to preserve or maintain the

---

[2] Plaintiff does not assert that Allstate actually took possession of any
specific item of potential evidentiary value and then destroyed it or lost
it. Instead, the crux of his complaint is that Allstate, by undertaking the
inspection of the premises, assumed control and should have prevented
anyone else (including the owner) from entering the apartment, taking
possession of any items in the apartment, or renovating or repairing the
apartment.

[3] As pointed out in the dissent, Ricky Teel "was medically not compe-
tent."

evidence. There is no alleged statutory duty, no alleged promise by Allstate to maintain it, and no special relationship existing that would warrant the imposition of a duty on Allstate to preserve evidence. Absent an articulable, legally recognized duty, there can be no cause of action for the alleged tort of spoliation of evidence.

Finally, this case is similar to *American Nat'l Prop and Cas Co v Wilmoth*, 893 NE2d 1068, 1069 (Ind App, 2008). In that case, a fire broke out in a home that a family, consisting of the parents and their two children, rented from Robert and Betty Bowers. Tragically, the two children and one of the parents died as a result of the fire. While fighting the fire, firefighters threw a couch and other items onto the front yard, where they remained for approximately six weeks. The fire department concluded that the fire was accidental and was caused by an electrical space heater, and the Bowerses eventually discarded the items. The surviving parent's later-retained experts, however, believed that the fire started because of electrical arcing from an air conditioner power cord "in the area of the sofa." The parent brought an action against the landlords' insurer, alleging that it permitted spoliation of evidence concerning the origin of the fire (specifically the couch), which evidence might have been needed in an action against the Bowerses. Noting that the duty to preserve evidence has limits, the *American Nat'l* court recognized that the insurer never had possession, much less exclusive possession, of the couch and that when the Bowerses disposed of the couch, the fire department had determined that the fire was an accident caused by an electrical space heater. The Indiana Court of Appeals ultimately held that the insurer was entitled to summary disposition of the parent's claim "because it owed no duty to [the parents]. Its contractual relationship

was with its insured, [the] Bowers[es]; it never had exclusive possession of the couch . . . ." *Id.* at 1071. We find the above reasoning sound.

Affirmed.

SAAD, C.J., concurred.

DAVIS, J. (*dissenting*). I respectfully dissent. As the majority explains, our system of government allocates the development of new rights to the legislative branch. However, the majority gives inadequate recognition to the judiciary's traditional and proper role of developing new *remedies* for violations of established rights. That distinction is everything at this stage of this case.

" 'Wherever there is a valuable right and an injury to it, with consequent damage, the obligation is upon the law to devise and enforce such form and mode of redress as will make the most complete reparation.' " Cooley, A Treatise on the Law of Torts, § 4, pp 7-8 (J. Lewis ed, 3d ed, 1907), quoting *Foot v Card*, 58 Conn 1, 9; 18 A 1027 (1889), citing *Lynch v Knight*, 9 HL Cas 577 (1861). This principle is not foreign in Michigan. "Where there is a person negligently injured by another, normally there is recovery therefor. *Ubi injuria, ibi remedium.*" *Williams v Polgar*, 391 Mich 6, 11; 215 NW2d 149 (1974). As applied, our Supreme Court has, in the past, *upheld* a tort action for destruction of a will—which could not then be proven in probate court—because no applicable statute covered "the distinct wrong of spoliation, or provide a remedy for the varied damages which may result therefrom." *Creek v Laski*, 248 Mich 425, 430; 227 NW 817 (1929). Our Supreme Court explained that " 'whenever the law gives a right or prohibits an injury, it will also afford a remedy,' " irrespective of the existence of any precedent for any specific action necessary to obtain that remedy. *Id.*, quoting 11 C J, p 4.

As noted by my colleagues, a wholly new right must be crafted by the Legislature, but a novel application thereof is within the competence and authority of the courts. " 'Where the case is new in principle, the courts have no authority to give a remedy, no matter how great the grievance; but where the case is only new in instance, and the sole question is upon the application of a recognized principle to a new case, it will be just as competent to courts of justice to apply the principle to any case that may arise two centuries hence as it was two centuries ago.' " Cooley, *supra* at 9 n 13, quoting *Pavesich v New England Life Ins Co*, 122 Ga 190, 193-194; 50 SE 68 (1905) (additional quotation marks and citation omitted). This general principle has been adopted by our Supreme Court from yet another of Justice COOLEY's treatises, observing that a " 'right cannot be recognized until the principle is found which supports it,' " but " 'when a right is found, a remedy must follow of course.' " *Harvey v Harvey*, 239 Mich 142, 147; 214 NW 305 (1927) (overruled in part on changed statutory grounds in *Hosko v Hosko*, 385 Mich 39, 44-45; 187 NW2d 236 [1971]), quoting 1 Cooley, Torts (3d ed), p 22.

Relevant to this case, in addition to the spoliation action upheld in *Creek*, Michigan law has long recognized that destruction of evidence by a party to a suit gives rise to a presumption that the evidence would have been harmful to that party's case. *Pitcher v Rogers' Estate*, 199 Mich 114, 121; 165 NW 813 (1917). If a party knowingly makes it impossible for the other party to prove some injury, "the law will supply the deficiency of proof thus caused by the misconduct of the party by making every reasonable intendment against him, and will give weight and force to every presumption which the nature and extent of the wrong will justify and the circumstances will permit." *Bethel v*

*Linn*, 63 Mich 464, 475; 30 NW 84 (1886). The maxim
*omnia præsumuntur contra spoliatorem*, "said to be a
favorite one of the law," was translated as "all things
are presumed against a wrong-doer." *Id*. and n 1.

In *Brenner v Kolk*, 226 Mich App 149; 573 NW2d 65
(1997), the plaintiff was injured in a motor vehicle
accident while driving a car borrowed from the defen-
dants. The plaintiff stored the vehicle for a time, then
had it demolished, only later to decide to commence
suit, alleging that the now-demolished vehicle had been
defective. This Court considered "the proper analysis
for a trial court to apply when, although no discovery
order has been violated, a party has failed to preserve
vital evidence." *Id*. at 156. This Court agreed with
federal precedent that a rebuttable presumption
against the plaintiff would have been simply inad-
equate, and in the absence of a discovery order viola-
tion, there was no applicable court rule, either; the
remedy must come from the court's "inherent powers."
*Id*. at 157-160. The trial court therefore possessed the
inherent power and authority to impose a sanction
tailored to prevent the wrongdoer from reaping any
benefit from the wrongdoing. *Id*. at 160-161.

Critically, this Court recognized that "[e]ven when an
action has not been commenced and there is only a
potential for litigation, the litigant is under a duty to
preserve evidence that it knows or reasonably should
know is relevant to the action." *Id*. at 162, citing *Fire
Ins Exch v Zenith Radio Corp*, 103 Nev 648, 651; 747
P2d 911 (1987). It was significant that in *Brenner* the
plaintiff knew that she was contemplating a lawsuit,
and that the actions and omissions that resulted in the
vehicle's going unpreserved and the defendants' going
unaware of the potentially pending suit were inten-
tional. *Brenner, supra* at 162. The Court of Appeals

concluded that dismissal had been inappropriate in that case because it was too drastic without the trial court first considering whether lesser sanctions would be sufficient or, at least, placing on the record a finding that dismissal was the only way to "deny plaintiff the fruits of her misconduct." *Id.* at 164. Six years later, this Court reaffirmed the principles set forth in *Brenner* and concluded that, on the facts before it, dismissal was indeed the appropriate sanction for failing to preserve evidence. *Bloemendaal v Town & Country Sports, Inc,* 255 Mich App 207, 211-215; 659 NW2d 684 (2003).

Although the cases in Michigan have, thus far, only addressed spoliation of evidence by litigants, spoliation of evidence is nevertheless *recognized as a legally wrongful act.* In other words, there is *already* a well-established right of a litigant in Michigan to the integrity of evidence in a lawsuit. It follows that the courts are not only empowered, but obligated to provide a remedy for violations of that right.

The harm flowing from spoliation of evidence is, at a minimum, the inability to put on a full claim or full defense. In this case, the harm is much worse. Here, one person died, and another was hospitalized. Because the evidence was allegedly destroyed by an agency that had every reason to expect future litigation, plaintiff cannot proceed to the presentation of proofs on his claims. If the spoliator of evidence is already a party to the relevant litigation, it is straightforward matter for the court to impose a sanction as compensation. But if the spoliator of evidence is *not* a party, the same *way* of compensating for the spoliation is either impossible or unjust: the end result effectively punishes a party that has done nothing wrong. The reason why this Court should recognize a cause of action for spoliation of

evidence is that, where the spoliator is not already a party, there is simply *no other way* to provide a remedy for the invasion of the recognized right to that evidence.

I understand that relatively few other states have recognized a cause of action for spoliation of evidence. See, e.g., the cases enumerated in *Trevino v Ortega*, 969 SW2d 950, 952 n 3 (Tex, 1998), noting that at the time Alaska, New Mexico, and Ohio recognized causes of action for intentional spoliation of evidence; Florida and New Jersey recognized causes of action for negligent spoliation of evidence, and California recognized both. Since *Trevino* was decided, Montana has additionally recognized the need for such a cause of action where the spoliator was not a party to the impeded litigation. *Oliver v Stimson Lumber Co*, 1999 MT 328, ¶¶ 31-60; 297 Mont 336, 345-353; 993 P2d 11 (1999). I do find persuasive and significant the reasoning in *Oliver* explaining that, as my own research has shown, the jurisdictions that have rejected a spoliation cause of action have typically done so on the ground that an adequate remedy already existed and in cases where the spoliator was a party to the action. Neither of those conditions applies here, and, in any event, this Court should strive to do justice and correct legally recognized injuries even if no one else has been called upon before to do so in the same manner.

The facts in this case are particularly compelling. Even though the insurer was not a party (and likely could not have been, given that there is no suggestion that the insurer caused the fire), the insurer or its agent had every reason to anticipate future litigation based on the nature of the occurrence and the known injury and loss of life. The insurer acted without notice to the tenants of the apartment. The landlord gave the insurer access. Mrs. Teel had died in the fire, and Mr. Teel was

hospitalized with injuries from the fire. Furthermore, the insurer had every reason to know that anything under inspection in the apartment would likely be relevant evidence in impending litigation.[1] Critically, the majority's opinion makes it clear that Michigan law affords no remedy for this wrong unless the insured can pursue an independent action against the insurer.

The majority's analysis places would-be plaintiffs in an impossible situation if evidence is destroyed by a nonparty. There are, indeed, existing mechanisms to deal with the destruction of evidence by another party, but in this case, those mechanisms are unavailable because the injured party *cannot even get into court*. At most, the majority points out that in *some* instances, the injured party may be able to moderate the resulting harm to some extent; but even presuming the existence of criminal sanctions against whomever destroyed the evidence, imposition of those sanctions would not help the injured party bring a now-unavailable lawsuit. If the would-be plaintiff cannot even get into court because the evidence has been destroyed, none of the theoretical "remedies" suggested by the majority would be available. The *only* way to remedy such a harm is to permit this kind of a cause of action.

Furthermore, the majority arrives at a disturbing factual conclusion: that, notwithstanding the fact that Lillian Teel died in the fire and Ricky Teel was in the

---

[1] It is worth noting that, in an action like this, some kind of scienter must be present: the individual who spoils evidence "must have had at least a fair chance of avoiding the infliction of harm before he becomes answerable for such a consequence of his conduct." See Holmes, The Common Law (1881), p 163. Thus, a person with no reasonable basis to know that spoiled evidence *was* evidence should not be held to an essentially unknowable duty. Although this may present a proof problem, as could demonstration of damages, such difficulties are routinely dealt with by trial courts as a matter of course.

hospital[2] as a result of the fire, Ricky somehow should have won a race with the insurer of the property to be the first to send an inspector to the property or to have taken steps to preserve the scene. Even if Ricky were not hospitalized, and even if he had been informed that the insurer was sending an inspector to the property, it is inconceivable that someone who had recently suffered a serious injury and the loss of his wife in a fire should be expected to make the immediate logical deduction that the first order of business would be to preserve the premises from its insurer. At the same time, the majority analyzes the facts and concludes, at least by implication, that no spoliation actually took place. This latter conclusion, if true, would be a matter for the trier of fact, not us. In any event, I would not "hold Allstate liable for the spoliation of such items" outright, but would hold that plaintiff should have the opportunity to make a claim and present proofs thereof to the trier of fact.

I would hold that, where an individual's ability to pursue or defend an action has been impaired by a third party's willful or negligent spoliation of evidence, that individual may pursue a tort action against the spoliator. This would not create any new rights; it would merely provide a means of protecting rights already recognized to exist in the jurisprudence of this state. Although it is the role of the Legislature to craft new rights, it is the role of the courts to ensure—by crafting new remedies if necessary—that people who suffer an invasion of their rights have a meaningful way to be made whole.

I would reverse.

---

[2] The inspector stated that he had been advised that Ricky "was medically not competent."