PATTERSON v CITIFINANCIAL MORTGAGE CORPORATION

Docket No. 287370. Submitted April 14, 2010, at Detroit. Decided May 25, 2010, at 9:05 a.m.

Jacqueline Patterson and others brought an action in the Genesee Circuit Court against CitiFinancial Mortgage Corporation and others, including ABN AMRO and several of its subsidiaries. CitiFinancial was dismissed by stipulation. With regard to ABN AMRO and its subsidiaries (collectively defendant), plaintiffs alleged that defendant benefited from misrepresentations and fraudulent statements made to plaintiffs by Concept One Mortgage Corporation when plaintiffs entered into mortgage transactions with defendant in which the loans were originated and brokered by Concept One. Plaintiffs alleged that Concept One was not licensed or registered under, and failed to comply with, a number of state statutes and that defendant failed to properly oversee Concept One and was unjustly enriched because of the transactions. The court, Archie L. Hayman, J., granted defendant's motion for summary disposition, ruling that plaintiffs' claims were preempted by federal law. Plaintiffs appealed.

The Court of Appeals *held*:

1. Federal law may expressly or impliedly preempt state law, and federal regulations have the same preemptive effect as federal statutes. Express preemption occurs when federal law explicitly indicates that a specific state law is preempted. The fact that plaintiffs' allegations against defendant were based on the conduct of a third party working for defendant did not alter the preemptive effect of the federal regulations at issue. The focus of the preemption inquiry is on the activity being regulated rather than the actor that is being regulated. Defendant's use of Concept One's services was authorized by a federal regulation, 12 CFR 7.1004, and Concept One's conduct was done in furtherance of defendant's power as a national bank to make real estate loans. Defendant is entitled to the protection afforded by the preemption doctrine regardless of the fact that plaintiffs' claims are based on alleged misconduct by Concept One.

2. Under 12 CFR 34.4(a)(1) and (10), defendant was broadly permitted to make real estate loans without regard to state laws

governing licensing or registration or the manner in which its mortgages are originated or processed. To the extent that plaintiffs' claims were based on Concept One's failure to observe Michigan licensing and registration statutes in the initiation and processing of the mortgages at issue, they were expressly preempted. Plaintiffs' claims based on the common law, including fraud, misrepresentation, and unjust enrichment, were similarly preempted under 12 CFR 34.4(b)(1), (2), and (9) because if successfully pursued, they would have more than an incidental effect on the exercise of defendant's federally granted real estate lending powers.

Affirmed.

1. BANKS AND BANKING — FEDERAL PREEMPTION — NATIONAL BANKS — AFFILIATES AND SUBSIDIARIES OF NATIONAL BANKS — STATE AND FEDERAL REGULATION.

A state law action against a national bank and its affiliates may be preempted by federal law even though the allegations against the national bank and its affiliates are based on the actions of a third party working for the national bank; the focus of the preemption inquiry is on the activity being regulated rather than the actor that is being regulated.

2. BANKS AND BANKING — FEDERAL PREEMPTION — NATIONAL BANKS — AFFILIATES AND SUBSIDIARIES OF NATIONAL BANKS — MORTGAGE LENDING — STATE AND FEDERAL REGULATION.

Federal law permits a national bank to make real estate loans without regard to state laws governing licensing and registration or the manner in which its mortgages are originated or processed; an action based on the failure of independent agents working for a national bank to observe Michigan licensing and registration statutes in the initiation and processing of mortgages is expressly preempted (12 CFR 34.4[a][1], [10]).

3. BANKS AND BANKING — FEDERAL PREEMPTION — NATIONAL BANKS — AFFILIATES AND SUBSIDIARIES OF NATIONAL BANKS — MORTGAGE LENDING — FRAUD — MISREPRESENTATION — UNJUST ENRICHMENT.

A common-law action for fraud, misrepresentation, or unjust enrichment based on the actions of independent agents working for a national bank is preempted by federal law (12 CFR 34.4[b][1], [2], [9]).

*Constitutional Litigation Associates, P.C.* (by *Hugh M. Davis, Jr.*), and *Attorneys Against Predatory Lending, PLC* (by *Robert C. Horvath*), for Jacqueline Patterson and others.

*RJ Landau Partners PLLC* (by *Richard J. Landau* and *Kristen M. Tsangaris*) for ABN AMRO, Standard Federal Bank, LaSalle Bank, and Interfirst Wholesale Mortgage Lending.

Before: BANDSTRA, P.J., and BORRELLO and SHAPIRO, JJ.

BANDSTRA, P.J. Plaintiffs brought this action against ABN AMRO (a national bank) and its subsidiaries (defendant), seeking damages arising out of mortgages that were allegedly initiated by independent agents working for defendant who were not properly licensed under state law.[1] The trial court granted summary disposition to defendant, concluding that this action is preempted by federal law, the National Bank Act, and attendant regulations. We agree with that conclusion, and we affirm.

Defendant brought its motion for summary disposition under MCR 2.116(C)(7), arguing that plaintiffs' claim is barred under the preemption doctrine. We review de novo the trial court's decision granting that motion. *Grimes v Dep't of Transp*, 475 Mich 72, 76; 715 NW2d 275 (2006). Defendant's motion was also brought under MCR 2.116(C)(8), which bars claims for which no relief can be granted, in this case because of federal preemption. Our review of the trial court's decision granting summary disposition under this rule is also de novo. *Teel v Meredith*, 284 Mich App 660, 662; 774 NW2d 527 (2009). With respect to either basis for summary disposition, we accept plaintiffs' allegations as true and must determine whether the claims based on those allegations are barred under the federal preemption doctrine. *Adair v Michigan*,

---

[1] Defendant CitiFinancial Mortgage was dismissed from this action by stipulation. References in this opinion to "defendant" are to ABN AMRO and its subsidiaries.

470 Mich 105, 119; 680 NW2d 386 (2004); *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001).

The allegations ·necessary for consideration of the preemption question can be briefly stated. Plaintiffs alleged that they entered into mortgage transactions with defendant in which the loans were originated and brokered by Concept One Mortgage Corporation and affiliated entities (collectively Concept One). Plaintiffs alleged that Concept One was not licensed or registered under, and failed to comply with, a number of state statutes. Plaintiffs alleged that defendant failed to properly oversee Concept One and that defendant benefited from misrepresentations and fraudulent statements made to plaintiffs by Concept One in initiating and processing loan and mortgage applications. As a result, plaintiffs sought damages from defendant, claiming that defendant was unjustly enriched because of the transactions.

The doctrine of preemption "is rooted in the Supremacy Clause of the United States Constitution," and to determine whether federal law preempts a state law claim, we examine federal law. *Betty v Brooks & Perkins*, 446 Mich 270, 276; 521 NW2d 518 (1994). Federal law may expressly or impliedly preempt state laws; express preemption occurs when federal law explicitly indicates that a specific state law is preempted. *Fidelity Fed S&L Ass'n v de la Cuesta*, 458 US 141, 152-153; 102 S Ct 3014; 73 L Ed 2d 664 (1982). Further, "[f]ederal regulations have no less pre-emptive effect than federal statutes." *Id.* at 153.

Administration of the federal statute at issue here, the National Bank Act, 12 USC 21 *et seq.*, has been granted to the Office of the Comptroller of the Currency (OCC). In pertinent part, regulations promulgated by the OCC provide that

state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks. Specifically, a national bank may make real estate loans . . . without regard to state law limitations concerning:

(1) Licensing, registration, . . . [or the]

\* \* \*

(10) Processing [or] origination . . . of . . . mortgages[.] [12 CFR 34.4(a)(1) and (10).]

Further, the Code of Federal Regulations provides that:

State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks *to the extent that they only incidentally affect the exercise of national banks' real estate lending powers*:

(1) Contracts;

(2) Torts;

\* \* \*

(9) Any other law the effect of which the *OCC determines to be incidental to the real estate lending operations of national banks* . . . . [12 CFR 34.4(b) (emphasis added).]

Virtually identical regulations, promulgated by the Office of Thrift Supervision (OTS) with respect to federal savings associations, were recently considered by the United States Court of Appeals for the Sixth Circuit in *State Farm Bank, FSB v Reardon,* 539 F3d 336 (CA6, 2008). The Superintendent of the Ohio Division of Financial Institutions challenged the system by which State Farm Bank marketed its mortgage products and services, through an existing network of insurance agents, because those agents were not licensed and did not otherwise submit to regulation under a state statute.

Initially, the superintendent claimed that, while the federal regulatory scheme might preempt application of the Ohio statute to "State Farm Bank, its employees, and its subsidiaries who engage in the solicitation and marketing of mortgage products, the regulation does not apply to State Farm Bank's exclusive agents who perform the same tasks on behalf of the bank." *Id.* at 344-345. The *Reardon* court rejected that argument:

> First, nothing in the text of [the regulation] indicates that it only preempts state laws that directly regulate federal savings associations. Rather, the regulation provides that it preempts laws "affecting the operations of federal savings associations," which indicates that the scope of the regulation is much broader than the Superintendent would have it. Second, the Superintendent's position is inconsistent with the Supreme Court's decision in *Watters* [*v Wachovia Bank, NA,* 550 US 1; 127 S Ct 1559; 167 L Ed 2d 389 (2007)].
>
> The Court in *Watters* recently rejected an argument similar to that advanced by the Superintendent today. *See Watters,* [550 US at 17-18] 127 S.Ct. at 1570. The precise issue in *Watters* was whether the National Banking Act and regulations promulgated by the OCC preempted state regulation of a national bank's mortgage lending activities where those activities were performed by a bank's operating subsidiary. *Id.* at [7; 127 S Ct at] 1564. The Commissioner of Insurance and Financial Services for the State of Michigan argued in *Watters* that Wachovia Mortgage, a Wachovia Bank operating subsidiary, was subject to Michigan's licensing and registration requirements. *Id.* at [9-10; 127 S Ct at] 1565. The Commissioner reasoned that federal law did not preempt the application of the Michigan requirements to Wachovia Mortgage because it was not a national bank. *Id.* at [15; 127 S Ct at] 1569.
>
> The *Watters* Court was unpersuaded by the Commissioner's narrow interpretation of federal banking law, and we are likewise unpersuaded by the Superintendent's interpretation of [the regulation] in this case. According to

the Court in *Watters*, federal banking law preempted the application of Michigan's requirements to Wachovia Mortgage because "[w]e have never held that the preemptive reach of [federal banking laws] extends only to a national bank itself. Rather, in analyzing whether state law hampers the federally permitted activities of a national bank, we have focused on the exercise of a national bank's *powers*, not on its corporate structure." *Id.* at [18; 127 S Ct at] 1570. Further illustrating that, for preemption purposes, it is the activity being regulated rather than the actor who is being regulated that matters, the Court stated that federal law protects "from state hindrance a national bank's engagement in the 'business of banking' whether conducted by the bank itself or by an operating subsidiary, empowered to do only what the bank itself could do." *Id.* at [21; 127 S Ct at] 1572.

Continuing with the theme of interpreting things in an overly narrow fashion, the Superintendent says *Watters* is inapposite because the Court's opinion only addressed preemption of state laws that regulate operating subsidiaries of a national bank, not exclusive agents of a federal savings association. The Superintendent is correct that *Watters* involved an operating subsidiary soliciting and marketing mortgages on behalf of a national bank, and this case involves an exclusive agent soliciting and marketing mortgages on behalf of a federal savings association. The distinction, however, is one without a difference and fails to appreciate the principle set forth by the Court in *Watters*. Properly understood, *Watters* stands for the proposition that when considering whether a state law is preempted by federal banking law, the courts should focus on whether the state law is regulating "the exercise of a national bank's power" not on whether the entity exercising that power is the bank itself. *Id.* at [18; 127 S Ct at] 1570. The Superintendent urges us to do the inverse; his argument focuses on the fact that the individuals being regulated are State Farm Bank's exclusive agents while ignoring the fact that the power being exercised is clearly that of a federal savings association. [*Id.* at 345-346.]

Plaintiffs here make an argument similar to that of the superintendent rejected in *Reardon*. They claim that any preemption protection that might otherwise be afforded to defendant would not be available because their allegations against defendant are based on the actions of a third party, Concept One, which worked for defendant. For reasons similar to those employed by *Reardon*, we reject plaintiffs' claim in this regard. The OCC regulations at issue here provide that defendant may make real estate loans "without regard to" state laws governing licensing or registration or the manner in which its mortgages are originated or processed. 12 CFR 34.4(a)(1) and (10). Thus, the scope of the regulation is much broader than plaintiffs would have it. Following *Watters*, we focus on the exercise of defendant's power, granted by federal law, to make real estate transactions, not on defendant's corporate or agency structure. "[I]t is the activity being regulated rather than the actor who is being regulated that matters . . . ." *Id.* at 345. As we consider whether state law is preempted by federal banking law, we must focus on "whether the state law is regulating 'the exercise of a national bank's power' not on whether the entity exercising that power is the bank itself." *Id.*, quoting *Watters*, 550 US at 18. Plaintiffs' argument ignores the fact that the complained-of conduct by Concept One was done in furtherance of defendant's power, as a national bank, to make real estate loans. Defendant's use of Concept One's services was specifically authorized by an OCC regulation. 12 CFR 7.1004. As did the court in *Reardon*, we conclude that defendant here is entitled to whatever protection might be afforded by the preemption doctrine, regardless of the fact that plaintiffs' action is based on alleged misconduct by Concept One.

With respect to the protection provided by the preemption doctrine, we again find guidance in *Reardon*, in which the court reasoned that the statute requiring the state licensing and regulation of State Farm Bank's agents was preempted by the OTS regulations at issue:

> [T]he Ohio Act's licensing and certification requirements fall within the category of state laws that [the regulation] specifically says are preempted; not only does the Ohio Act constitute a law regarding "licensing" or "registration", . . . it also affects—in more than an incidental manner—the "processing" and "origination" of mortgages . . . . Even if the Ohio Act were held not to fall within the class of state laws preempted [by those provisions], preemption would still be appropriate here because the Ohio Act does not fit into any of the categories that [the regulation] excludes from preemption, and the Ohio Act has more than an "incidental effect" . . . on State Farm Bank's mortgage lending operations. [*Reardon*, 539 F3d at 347-348.]

Construing the virtually identical language of the OCC regulation at issue here, we come to the same conclusion. As a national bank, defendant "may make real estate loans . . . without regard to state law limitations concerning . . . [l]icensing [or] registration" or the "[p]rocessing" or "origination" of mortgages. 12 CFR 34.4(a)(1) and (10). To the extent that plaintiffs' claims against defendant are based on Concept One's failure to observe licensing and registration provisions of Michigan statutes in the initiation and processing of the mortgages at issue, they are expressly and directly preempted; defendant was free to proceed "without regard" to the Michigan statutory scheme. Further, defendant can be subject to suit under common-law theories arising out of contracts or torts or "any other law" only if such claims merely "incidentally affect the exercise of [defendant's] real estate lending pow-

ers . . . ." 12 CFR 34.4(b)(1), (2), and (9). To the extent that plaintiffs' claims are based on common-law theories of fraud, misrepresentation, or unjust enrichment or other theories, they would, if successfully pursued, have far more than an "incidental" effect on defendant's exercise of the real estate lending powers granted under the federal scheme. In this regard, the *Reardon* court made a number of observations that are equally apposite here:

> Were this court to agree with the Superintendent that the Ohio Act may be applied to State Farm Bank's exclusive agents, we would be opening the door to subjecting State Farm Bank and its exclusive agents to fifty separate and distinct licensing and regulatory schemes, all with their own requirements and procedural hurdles. Subjecting State Farm Bank and its exclusive agents to such a veritable "hodgepodge" of state regulation would not only be unduly burdensome, it would also be at odds with the very purpose behind federal regulation of federal savings associations. . . .
>
> . . . Regardless of the gloss that the Superintendent attempts to place on the issue, the practical effect of the Ohio Act is that State Farm Bank must either change its structure or forego mortgage lending in Ohio. . . . The state of Ohio is not—nor is any state for that matter—entitled to impose such regulations on the powers of a federal savings association. [*Reardon*, 539 F 3d at 348-349.]

The same analysis requires preemption here.

The trial court properly concluded that plaintiffs' claims against defendant were preempted under federal law. Having made that determination, we need not consider the other issues raised on appeal. We affirm. Defendant, the prevailing party, may tax costs. MCR 7.219.